Irwin L. JACOBS, Dennis M. Mathisen, Gerald A. Schwalbach, Daniel T. Lindsay and Paul Kalmanovitz, individually and as shareholders of Pabst Brewing Company, Plaintiffs,

v.

G. HEILEMAN BREWING COMPANY, INC., a Wisconsin corporation, Russell G. Cleary, Ralf H. Owen, Arthur N. Trausch, Jr., William A. Barney, John S. Pedace, William G. Phillips, William G. Roth, Robert J. Korkowski, John D. Glenn, Peter F. O'Sullivan, John T. Sleik, Joseph Rotold, John B. Barrett, Ralph E. Horn, Thomas J. Carroll, Ronald J. Drout, Daniel J. Schmid, Jr., George E. Smith and Louise A. Bruring, individually and as members of the Board of Directors of G. Heileman Brewing Company, Inc., HBC Acquisition Inc., a Delaware corporation, Pabst Brewing Company, a Delaware corporation, William F. Smith, Jr., August U. Pabst, Thomas J. Donnelly, Karl Eller, Ira C. Herbert, William E. Kimberly, Sheldon B. Lubar, Thomas N. McGowen, Jr., Karl F. Hoenecke, Raymond S. Troubh and Frederick P. Stratton, Jr., individually and as members of the Board of Directors of Pabst Brewing Company, Olympia Brewing Company, a Washington corporation, Robert A. Schmidt, Alfred J. Gagnon, Sherman R. Huffine, Charles Kuper, Robert D. O'Brien, Peter G. Schmidt, Theodore F. Schmidt and Samuel N. Stroum, individually and as members of the Board of Directors of Olympia Brewing Company, Defendants.

PABST BREWING COMPANY, a Delaware corporation, Counterclaimant,

v.

Irwin L. JACOBS, Dennis M. Mathisen, Gerald A. Schwalbach, Daniel T. Lindsay and Paul Kalmanovitz, Counterclaim Defendants,

JMSL Acquiring Corp., a Delaware corporation, and PST Acquiring Corp., a Dela-

ware holding company, Additional Counterclaim Defendants.

Civ. A. No. 82–736.

United States District Court,
D. Delaware.

Dec. 1, 1982.

R. Franklin Balotti and Jesse A. Finkelstein, of Richards, Layton & Finger, Wilmington, Del., Dennis J. Block, Alan J. Weinschel, Joseph Allerhand, Yvette Miller, Surie Rudoff, Charles Ferris, Helene Jaffe and Richard Taggart of Weil, Gotshal & Manges, New York City, of counsel, for all plaintiffs and counterclaim defendants except Paul Kalmanovitz.

Joseph Alioto of Alioto & Alioto, San Francisco, Cal., for plaintiff and counterclaim defendant Paul Kalmanovitz.

Bruce M. Stargatt and David McBride, of Young, Conaway, Stargatt and Taylor, Wilmington, Del., Maurice J. McSweeney, of Foley & Lardner, Milwaukee, Wis., Leslie Smith and Howard W. Fogt, Jr., of Foley, Lardner, Hollabaugh & Jacobs, Washington, D.C., of counsel, for defendants Heileman Brewing Co. and its directors and HBC Acquisition Inc., and its directors.

A. Gilchrist Sparks, III and Kenneth J. Nachbar, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Michael W. Schwartz, Lawrence Letterman, Eric M. Roth, Barry A. Weprin, and Patricia Vlahakis, of Wachtell, Lipton, Rosen & Katz, New York City, Willis B. Snell, Douglas Rosenthal and Michael Denger, of Sutherland, Asbil & Brennan, Washington, D.C., and Michael, Best & Friedrich, Milwaukee, Wis., of counsel, for defendants and counterclaimants Pabst Brewing Co. and its directors.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Plaintiffs, Irwin L. Jacobs, Dennis M. Mathisen, Gerald A. Schwalbach, Daniel L. Lindsay, and Paul Kalmanovitz (collectively

referred to as the "Jacobs Group"), individually and as shareholders of Pabst Brewing Company ("Pabst"), brought this action on November 15, 1982 pursuant to 15 U.S.C. §§ 78aa, 26, 28 U.S.C. §§ 1331, 1337 and 2201, and the principles of ancillary and pendent jurisdiction seeking injunctive relief against G. Heileman Brewing Company, Inc. ("Heileman"), HBC Acquisition Inc. ("HBC"), Pabst Brewing Company ("Pabst"), and Olympia Brewing Company ("Olympia"), and the Board of Directors of each of these corporations, from continuing HBC's partial tender offer of Pabst common stock (the "HBC tender offer"). The Jacobs Group, in its complaint, has alleged twelve causes of action. The first five causes of action claim that the defendants have violated various provisions of the Securities Exchange Act of 1934 ("Exchange Act") including Sections 10(b), 13(e) and 14(d) & (e), 15 U.S.C. §§ 78j(b), 78m(e), and 78n(d) & (e) (1976). The other causes of action allege that the Pabst directors have breached the fiduciary duty they owe to the Pabst shareholders and that the defendants have conspired to violate various provisions of the antitrust laws including Section 7 of the Clayton Act, 15 U.S.C. § 18 and Section 1 of the Sherman Act, 15 U.S.C. § 1.

Defendant Pabst, on November 22, 1982, counterclaimed against the Jacobs Group, JMSL Acquiring Corp. ("JMSL"), and PST Acquiring Corp. ("PST"),[1] seeking a temporary restraining order and a preliminary injunction enjoining JMSL from acquiring shares of Pabst pursuant to the October 27, 1982 tender offer by JMSL (the "JMSL tender offer"). Pabst alleges that the counterclaim defendants violated Section 14(d) & (e) of the Exchange Act by creating multiple proration pools, and that if multiple proration pools are permissible, the counterclaim defendants nevertheless violated Section 14(d) & (e) by failing to make timely public disclosure of its ability and intention to raise the price of the JMSL offer and of its intention to create multiple proration pools.

On November 24, 1982, the Court denied the Jacobs Group's and Pabst's motions. This memorandum opinion will address Pabst's counterclaim.[2]

On October 26, 1982, JMSL announced its intention to make a partial tender offer for 3,000,000 shares of Pabst stock (approximately 37% of the outstanding shares) at a price of $24 per share. The tender offer commenced on October 27, 1982, pursuant to an Offer to Purchase bearing that date (the "JMSL Offer to Purchase"). The JMSL Offer to Purchase generally provided that, if the tender offer succeeds, the individual members of the Jacobs Group will transfer 1,140,305 shares of Pabst to JMSL, thereby giving JMSL control of approximately 50.6% of the outstanding shares of Pabst. The JMSL Offer to Purchase also stated that the Jacobs Group intends to propose a second-step merger in which all Pabst shareholders other than JMSL will receive cash and/or debentures designed to have a value of at least $20 per Pabst share on a fully distributed basis.

The JMSL Offer to Purchase also provided a proration period that was to expire on November 5, 1982, ten business days after commencement of the offer, and a withdrawal date of November 17, 1982. On Tuesday, November 9, 1982, JMSL announced that by the November 5 proration date, 5,340,000 Pabst common stock had been tendered.

On November 5, 1982, HBC, a wholly-owned subsidiary of Heileman, also announced its intention to make a partial tender offer for 73% of Pabst stock at a price of $25 per share. The tender offer commenced on November 10, 1982, pursuant to an Offer to Purchase bearing that date (the "HBC Offer to Purchase") and offered

---

1. JMSL is a Delaware corporation and a wholly-owned subsidiary of PST. The outstanding shares of PST are owned by Kalmanovitz (50%), Jacobs (24.5%), Mathisen (8.5%), Lindsay (8.5%), and Schwalbach (8.5%).

2. Briefing on this issue was not completed until the morning of the argument. The Court, in denying the injunctive relief from the bench, reserved the right to issue a memorandum opinion and/or order confirming its oral ruling.

$27.50 a share. The HBC Offer to Purchase stated that the partial tender offer was contingent upon the tendering of at least 3,800,000 shares to HBC. The HBC tender offer caused JMSL to extend the JMSL withdrawal date from November 17, 1982 to November 26, 1982, ten calendar days.

On November 18, 1982, JMSL made an announcement that it was increasing its offering price to $30 per share for the 3,000,000 Pabst shares it was seeking in its tender offer. On November 23, 1982, in a Press Release, JMSL made another announcement that it had again increased its offer from $30 to $35 per share. The Press Release also stated that the withdrawal deadline remained on November 26, 1982, and that the offer will expire on December 7, 1982. In its Press Release, JMSL also provided for an order of priority ("order of priority") in which JMSL will accept the shares that are tendered, in the event that more than 3,000,000 shares are tendered to it. The order of priority provided that JMSL would first accept, on a pro rata basis, all the shares that were tendered and not withdrawn prior to the first proration date of November 5, 1982. If fewer than 3,000,000 shares had been tendered and not withdrawn in the first proration period JMSL would then accept on a first-come, first-serve basis those shares tendered and not withdrawn prior to the November 18, 1982 announcement. If the offer remained undersubscribed, shares tendered after the November 18, 1982 announcement and not withdrawn prior to the second proration date of December 2, 1982 would then be accepted on a pro rata basis. Finally, if the offer was still undersubscribed after the second proration period, those shares tendered would be accepted on a first-come, first-served basis.

Pabst alleges that JMSL's order of priority violates Section 14(d) & (e) of the Act and requests that this Court enjoin the purchase of Pabst common stock pursuant to the JMSL tender offer until (1) the terms of the tender offer have been changed to provide for one proration period beginning from the commencement of the JMSL offer on October 27 and ending 10 days after the issuance of the Court's order, and (2) the withdrawal period has been extended to a date not less than fifteen days after the issuance of the Court's order.

Pabst argues that JMSL's use of multiple proration pools is violative of the provisions of Sections 14(d)(6) and 14(e) because it unjustifiably discriminates in favor of those shareholders who have tendered their shares to JMSL during the first proration period and who did not subsequently withdraw, over those shareholders who either did not tender during that proration period or later withdrew. Pabst contends that if JMSL's use of multiple proration pools is permitted then the provisions of the Williams Act, which were designed to enforce equality of treatment among shareholders, will "be perverted into a device for egregious *discrimination* among shareholders." (Docket Item ["D.I."] 10 at 13.) Pabst maintains that under the order of priority, those shareholders who tendered at the lower JMSL offering price, and who did not later withdraw, will be able to receive $35 a share for all of their shares; while those shareholders who either did not tender, or who tendered and later withdrew in order to tender to the then higher HBC offer, will not have the same opportunity to benefit from the subsequently higher JMSL offer.[3]

Pabst relies upon Release No. 34–18761 *reprinted in* [Current] Fed.Sec.L.Rep. (CCH) ¶ 83,222 (May 25, 1982), for the proposition that JMSL's use of multiple prora-

---

3. On November 23, 1982, JMSL announced that as of November 22, 1982, approximately 2,800,000 shares had been properly tendered (and not withdrawn) prior to the first increase announcement on November 18, 1982. Thus, if the JMSL offer is successful and these 2,800,000 shares are not withdrawn, each share tendered will receive $35. If the offer is oversub-scribed during the second proration period, the shareholders in the second proration pool will not have all of their shares "taken down," but will be "taken down" only on a pro rata basis. It is this discrimination among shareholders that Pabst alleges to be violative of the federal securities laws.

tion pools is coercive and confusing to Pabst shareholders. In this Release, the SEC stated that the end of the proration period represents a critical deadline for security holders faced with a partial tender offer because security holders must choose one of three investment decisions:

(1) tender to the bidder in order to be sure of participating in the tender offer; (2) sell on the open market at prices reflecting the tender offer price, the risks of proration and, in some cases, the likelihood of competing bids (foregoing any possible price increases and avoiding the risk of proration or bid failure); or (3) hold and remain a security holder of the subject company at least for the immediate future.

*Id.* at 85,143 (footnote omitted). The SEC also stated that the use of proration periods have complicated investment decisions and may cause considerable confusion in several respects:

First, it is questionable whether security holders fully appreciate the importance of deciding—before the expiration of the proration period—whether to tender, sell or hold their stock. The varying legal consequences of the disclosed "proration date," "withdrawal date," and "expiration date" may also confuse some security holders. Moreover, it has come to the Commission's attention that security holders may focus exclusively on the expiration date—twenty business days from the commencement of the offer—and ignore the importance of the shorter proration date. Such thinking could result in some security holders being shut out of offers.

Second, a short proration period, coupled with the pro rata provision which requires a bidder to extend the proration period for at least ten calendar days upon increasing the offered consideration, has given rise to a practice of timing price increases to establish a basis for interpreting the existing provisions to permit the creation of multiple "proration pools" rather than extending the initial proration period to the tenth calendar day from such increase. These multiple pools

also complicate the decision making process notwithstanding the extensive disclosure concerning the effect of such pools. Third, an increase in consideration by a bidder after its initial proration period has ended that results in a new ten calendar day proration period may create the illusion that additional pro rata rights have been conferred when, in fact, none have. To illustrate, when an offer is oversubscribed during the initial proration period and thereafter the consideration offered is increased without an increase in the number of shares sought, no shares tendered into the second proration pool will be accepted for purchase, even though announcement of the second proration pool may cause security holders to expect that shares tendered into that pool will be purchased on a pro rata basis.

*Id.* at 85,143–44 (footnote omitted).

In order to correct these practices, the SEC has thus proposed Rule 14d–8 which would provide that in a partial tender offer situation, the offeror is required to accept securities on a pro rata basis, according to the number of securities deposited during the entire period the offer remains open. Although Pabst recognizes that the SEC rule has not been adopted at this time, it maintains that this Court should apply the principles underlying the rule in order to prevent JMSL's abusive and manipulative practices in this case.

■ The Court rejects Pabst's assertion because of the provisions and legislative history of Section 14(d)(6) which permit the use of multiple proration pools. Section 14(d)(6) provides:

Where any person makes a tender offer, or request or invitation for tenders, for less than all the outstanding equity securities of a class, and where a greater number of securities is deposited pursuant thereto within ten days after copies of the offer or request or invitation are first published or sent or given to security holders than such person is bound or willing to take up and pay for, the securities taken up shall be taken up as nearly

as may be pro rata, disregarding fractions, according to the number of securities deposited by each depositor. The provisions of this subsection shall also apply to securities deposited within ten days after notice of an increase in the consideration offered to security holders, as described in paragraph (7), is first published or sent or given to security holders.

At the time of the enactment of Section 14(d)(6), the House and Senate made very clear that when there is an increase in the consideration of the offer, different proration periods are permitted:

> Proposed section 14(d)(6) would provide that where a greater number of securities are deposited within the first 10 days after a tender offer is made public than the person making that tender offer is bound or willing to take up, the securities deposited must be taken up pro rata according to the number of securities deposited by each depositor. If the person making the tender offer increases the consideration, a new 10-day pro rata period would be required allowing all shareholders a fair opportunity to participate in the offer. In the event that the consideration is increased, all shares deposited before the increase would be required to be taken up before any shares deposited thereafter, unless all shares deposited pursuant to the tender offer were taken up on a pro rata basis.

S.Rep. No. 550, 90th Cong. 1st Sess. 10 (1967); H.R.Rep. No. 1711, 90th Cong. 2d Sess. 10–11, *reprinted in* [1968] U.S.Code Cong. & Ad.News 2811, 2820. Therefore, the Court must reject Pabst's proposition that JMSL's tender offer must provide for one proration period.

■ Pabst also alleges that JMSL failed to make public disclosure of JMSL's ability to raise the price of the JMSL offer and thereby violated Section 14(d) & (e) of the Exchange Act. The Court rejects these allegations because it is clear that JMSL provided notice to the Pabst shareholders that the price per share of the offer could be changed. The JMSL Offer to Purchase expressly provides:

> If the Purchaser should decide, in its sole discretion, to increase the consideration offered to holders of Shares and, at the time that notice of such increase is first published, sent or given to holders of Shares in the manner specified below, the Offer is scheduled to expire at any time earlier than the expiration of a period ending on the 10th business day from, and including, the date that such notice is first so published, sent or given, the Offer will be extended until the expiration of such period of 10 business days.

*       *       *       *       *       *

> If, prior to the Expiration Date, the Purchaser shall increase the consideration offered to Stockholders, pursuant to the Offer, such increased consideration shall be paid to all Stockholders whose Shares have previously been accepted for payment pursuant to the Offer.

*       *       *       *       *       *

> It is not presently expected that the Acquiring Shareholders will infuse additional funds into PST but each of them reserves the right to do so if circumstances seem appropriate to them.

Civil Action No. 82–711 (D.I. 47, Ex. A at 3, 4 & 12).

■ Pabst further alleges that JMSL violated Rule 14d–6, 17 C.F.R. § 240.14d–6 (1982), by failing to make prompt disclosure that JMSL intended to increase the consideration of the offer. The Court finds that Pabst has failed to establish a reasonable probability of eventual success on this allegation. JMSL was under no duty to disclose its tentative plans, but was only required to disclose plans, within a reasonable time, once they were definite. *See Crane Co. v. Harsco Corp.*, 509 F.Supp. 115, 119 (D.Del.1981). Speculative statements disclosing possible tactical strategy might well confuse the market rather than provide material information. Therefore, the Court concludes that JMSL did not violate Rule 14d–6 and, as a matter of law, Pabst failed to demonstrate a reasonable probability of success on its motion for injunctive relief based on its counterclaim.

The Court will enter a written order in accordance with this Memorandum Opinion confirming its oral ruling made in open court on November 24, 1982.