**Michael M. FEDER, as custodian for Jeffrey Feder and Mark Feder, Monroe Weintraub, on behalf of himself and all others similarly situated, Plaintiffs,**

**v.**

**MACFADDEN HOLDINGS, INC. and Macfadden Acquisition Corp., Defendants.**

**No. 86 Civ. 4625(LLS).**

United States District Court, S.D. New York.

Oct. 11, 1988.

48

Goodkind, Wechsler, Labation & Rudoff, New York City, for plaintiffs; Jonathan M. Plasse, Lawrence A. Sucharow, of counsel.

Willkie Farr & Gallagher, New York City, for defendants; Richard L. Posen, of counsel.

## OPINION AND ORDER

STANTON, District Judge.

During the spring of 1986 defendants Macfadden Holdings, Inc. and its wholly-owned subsidiary Macfadden Acquisition Corporation (collectively "Macfadden") unsuccessfully tried to obtain control of John Blair & Co. ("Blair"). Plaintiffs, who tendered their Blair common stock to Macfadden, allege that Macfadden violated Sections 10(b) and 14 of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(d), 78n(e), 78j(b) (1982), which prohibit deceptive conduct and statements in connection with tender offers and the purchase or sale of securities. Macfadden moves to dismiss the amended complaint (the "Complaint") pursuant to Fed.R.Civ.P. 12(b)(6).

## FACTS

Accepting the allegations of the complaint as true, on April 22, 1986 Macfadden commenced a tender offer for all outstanding Blair common stock at $25 per share (the "offer"). Macfadden's Offer to Purchase stated that the offer was conditioned on (1) a minimum of 5,400,000 shares of common stock being validly tendered and not withdrawn; (2) approval by the Federal Communications Commission upon terms and conditions acceptable to Macfadden; and (3) Macfadden's having obtained sufficient financing. (Complaint, ¶ 14) The Offer to Purchase also stated that these conditions "were solely for the benefit of the defendants and could be waived 'to the extent legally permissible.' " (*Id.*, ¶ 33(a)) Macfadden's Schedule 14D–1 provided that the offer would expire on May 19, 1986, unless extended, and withdrawal rights would expire on May 12, 1986, unless another bidder commenced a tender offer for Blair. In that event, all shares not previ-

ously accepted for payment could be withdrawn on the date of the other tender offer and for ten business days thereafter. (*Id.*, ¶ 15)

Following Blair's Board of Directors' recommendation on May 5, 1986 that its shareholders reject the offer, Macfadden announced on May 6, 1986 that it remained committed to acquiring 100 percent of Blair's common stock at $25 per share. (*Id.*, ¶ 16, 17) Macfadden then extended its offer until May 23, 1986, but did not change the expiration date (i.e., May 12, 1986) for exercise of withdrawal rights. (*Id.*, ¶ 18) On May 21, 1986 Michael Feder tendered 400 shares and Monroe Weintraub tendered 500 shares of Blair common stock. (*Id.*, ¶ 5) Subsequently, the offer was extended seven more times and ultimately expired at midnight on June 5, 1986 (*Id.*, ¶ 19–23, 25)

In the interim, Blair announced on June 3, 1986 that it had entered into an agreement with Reliance Capital Group, L.P. ("Reliance") whereby Reliance would acquire 70% of Blair's common stock at $27 per share. (*Id.*, ¶ 24) The next day Macfadden announced that it was considering "boosting" the offer. (*Id.*) Reliance commenced its offer on June 5, 1986. Plaintiffs allege that Macfadden "purported to accept" their tendered shares after the commencement of Reliance's offer. (*Id.*, ¶ 27)

On June 12, 1986 [1], one week after the expiration of the offer, Macfadden made "an improved tender offer" for Blair, offering $30 per share of common stock (the "second offer"). (*Id.*, ¶ 28, 35) Reliance increased its offer to $31 per share on June 19, 1986, and Macfadden responded on June 25, 1986 by increasing the second offer to $32 per share. (*Id.*, ¶ 29, 30)

Plaintiffs contend that Macfadden violated (1) Sections 14(e) [2] and 10(b) [3] of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(e), 78j(b) (1982), and Rule 10b–5 [4] promulgated thereunder, 17 C.F.R. § 240.10b–5 (1986), by not adequately disclosing that it could waive certain conditions of the offer and by misrepresenting that it would only make one offer for Blair stock in its Offer to Purchase and press releases, and (2) Section 14(d)(7) [5] of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(d) (1982), commonly known as the "best-price" provision, by not paying them

---

**1.** Although paragraph 28 states that Macfadden made its second offer on June 10, 1986, other portions of the complaint and plaintiffs' memorandum indicate that this is an error.

**2.** Section 14(e) provides:

"It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request or invitation."

**3.** Section 10(b) states in relevant part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest for the protection of investors."

**4.** Rule 10b–5 states:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

**5.** Section 14(d)(7) provides:

"Where any person varies the terms of a tender offer or request or invitation for tenders before the expiration thereof by increasing the consideration offered to holders of such securities, such person shall pay the increased consideration to each security holder whose securities are taken up and paid for pursuant to the tender offer or request or invitation for tenders whether or not such securities have been taken up by such person before the variation of the tender offer or request for invitation."

the consideration offered in the second offer.

## DISCUSSION

■ The "proper considerations in ruling on a motion to dismiss pursuant to Rule 12(b)(6)," *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985), are as follows:

> [The] motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed.R.Civ.P. 10(c), or any document incorporated in it by reference.... [L]imited quotation does not constitute incorporation by reference.

Recently, however, the Second Circuit has read *Goldman* more liberally. Although a certain letter was not incorporated into the complaint in *National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories,* 850 F.2d 904, 910 n. 3 (2d Cir.1988), since the complaint clearly referred to it, there was no dispute as to its terms, and plaintiff quoted the letter in its memorandum, the court treated the letter as if it had been incorporated by reference into the complaint. In *Field v. Trump,* 850 F.2d 938, 949 (2d Cir.1988), the court stated:

> In determining whether these claims were properly dismissed under Rule 12(b)(6), we may of course refer to the Offer to Purchase and the 1984 Proxy Statement, which were annexed to defendants' motion to dismiss and are documents that are integral to plaintiff's claims (citations omitted).

Attached to Macfadden's motion are its two Offers to Purchase, the Schedule 14D–1 for the first offer, two press releases, and a letter dated June 3, 1986 regarding Macfadden's accepting shares for payment. Since the complaint and plaintiff's

memorandum refer to these documents and they are "integral" to plaintiffs' claims, they are deemed incorporated by reference into the complaint and will be considered in deciding this motion.

### I.  The Nondisclosure and Misrepresentation Claims

■ To state a claim under Sections 14(e) and 10(b), and Rule 10b–5, plaintiffs must allege that (1) defendants misrepresented or failed to disclose material facts in connection with the purchase or sale of securities, (2) plaintiffs relied to their detriment upon the misrepresentations or nondisclosures, and (3) defendants made such misrepresentations or nondisclosures with an intent to deceive, manipulate or defraud. *Caleb & Co. v. E.I. DuPont deNemours & Co.,* 599 F.Supp. 1468, 1474 (S.D.N.Y.1984).

Counts I and III of the complaint allege that the Offer to Purchase or various press releases (1) misrepresented that the offer was conditioned upon a minimum of 5,400,-000 shares or 51 percent of the common stock being validly tendered and not withdrawn, and that Macfadden was committed to proceeding with one offer for all of Blair's stock, and (2) failed to disclose the circumstances under which Macfadden would waive the condition that a minimum number of shares be tendered, and that a subsequent offer would be made at a higher price. (Complaint, ¶ 33).

■ Since plaintiffs tendered their shares on May 21, 1986 after all withdrawal rights expired [6], they could not have relied upon any information provided to them after this date. *See, e.g., Cahill v. Arthur Andersen & Co.,* 659 F.Supp. 1115, 1124 (S.D.N.Y.1986), *aff'd,* 822 F.2d 14 (2d Cir.1987) (plaintiff could not rely on alleg-

---

6. Annexed to defendants' motion is a letter dated June 3, 1986 from Macfadden to First Fidelity Bank of New Jersey which provides that Macfadden "hereby accepts for payment and thereby purchases all shares of Common Stock ... of John Blair & Company validly tendered and not withdrawn ... as of 12:00 midnight, New York City time, on June 3, 1986 ..." In light of this letter, plaintiffs' allegation that Macfadden "purported to accept" their shares after June 5, 1986 (Complaint ¶ 27) is irrelevant.

Thus, withdrawal rights for Macfadden's first offer expired as of May 12, 1986, a date which complied with then-existing Rule 14d–7, 17 C.F. R. § 240.14d–7 (1986). Rules promulgated after these dates, and interpretations thereof, have no bearing on this case. *See* Letter dated September 3, 1987 from Lawrence A. Sucharow, counsel for plaintiffs, and Letter dated September 8, 1987 from Richard L. Posen, counsel for defendants.

edly false statements made two years after sold securities); *Petersen v. Federated Development Co.*, 416 F.Supp. 466, 475 (S.D. N.Y.1976) (whether plaintiff "affected by the tender offer literature ... depends upon whether his contact with the offending material came at a time when he could have effectively acted upon it") Hence, only statements or omissions made in the Offer to Purchase and Schedule 14d–1 (both dated April 22, 1986), and the press releases dated May 6, 1986 and May 19, 1986 are at issue here.

### A. Waiver of Minimum Tender Condition

■ Plaintiffs assert that the Offer to Purchase did not specifically state that Macfadden could waive the minimum share condition. They also assert that to the extent the Offer to Purchase discussed generally Macfadden's ability to waive any conditions in general, it "buried" these statements.

A review of the Offer to Purchase shows otherwise. After reciting the offer's conditions, page 2 of the introductory material states: "The Purchaser reserves the right to waive any and all conditions of the offer which legally may be waived. See Section 15." Section 15, "Certain Conditions of the Offer", more fully explains the offer's conditions and concludes with this paragraph:

> The foregoing conditions are for the sole benefit of Macfadden and the Purchaser and may be asserted by Macfadden and the Purchaser regardless of the circumstances giving rise to such condition (including any action or inaction by Macfadden or the Purchaser), or may be waived to the extent legally permissible by Macfadden and the Purchaser, in whole or in part at any time and from time to time in their sole discretion.

These two provisions in the Offer to Purchase, which are cross-referenced and appear under bold-faced headings alerting the reader to their contents, adequately disclosed Macfadden's unlimited ability to waive the minimum tender condition. *See Revlon, Inc. v. Pantry Pride, Inc.*, 621 F.Supp. 804, 813 (D.C.Del.1985) (adequate disclosure of financing condition where stated in three separate places).

### B. Alleged Misrepresentation of Number of Tender Offers

■ Immediately following Blair's Board of Directors' disapproval of the offer, Macfadden issued a press release on May 6, 1986 stating: "Macfadden Holdings, Inc. stated today that it remains committed in its intention to acquire 100% of the common stock of John Blair & Co." However, plaintiffs allege that during this same time Macfadden was planning to increase its offer. They contend that this press release misrepresented Macfadden's true plans, and that Macfadden failed to disclose its intent to make a second offer in any other documents.

Macfadden persuasively argues that since its second offer was made only after its first offer proved unsuccessful and a higher offer was made by Reliance on June 5, 1986, it had no reason as of May 21, 1986 to consider increasing its offer or making a second offer. Moreover, Macfadden argues that even if it had considered these options it was not required to disclose such inherently tentative plans.

The case law sustains Macfadden's argument: Given the announcement of its second offer on June 12, 1986, any plans it may have formulated as of May 21, 1986 would have been contingent and not required to be disclosed. *See, e.g., Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482, 1491 (D.Del.1984) (no duty to disclose information regarding current or future plans that are uncertain or contingent in nature); *Todd Shipyards Corp. v. Madison Fund, Inc.*, 547 F.Supp. 1383, 1387 (S.D.N.Y.1982) (no duty to disclose tentative plans); *Jacobs v. G. Heileman Brewing Co., Inc.*, 551 F.Supp. 639, 644 (D.Del.1982) ("only required to disclose plans [to increase offer price], within a reasonable time, once they were definite") Likewise, Macfadden could not anticipate with certainty the conditions under which it might waive the minimum tender condition, and so was under no duty to disclose any speculative reasons.

Accordingly, Counts I and III of plaintiffs' amended complaint are dismissed.

## II. The Section 14(d)(7) Claim

■ To state a claim under Section 14(d)(7) Macfadden's second offer must have "varie[d] the terms of a tender offer ... before the expiration thereof by increasing the consideration offered to holders of such securities ..."

Macfadden argues that it "structured and labeled" its offers as separate offers: its second offer was for only 70% of the outstanding common stock, announced one week after the original offer expired, and Macfadden circulated a new Offer to Purchase. As such Macfadden argues its second tender offer was a new and separate offer rather than the "enhancement and continuation" plaintiffs allege it to be. Defendants rely on *Brill v. Burlington Northern, Inc.*, 590 F.Supp. 893 (D.Del. 1984), where the court held (in ruling on a motion to dismiss) that an offer made to the same shareholders at the same price as the original offer and one day after the defendant terminated and withdrew its original offer was a separate offer from the original offer.

Despite the apparent similarities between *Brill* and this case, recent authority in this circuit compels a different conclusion. In *Field v. Trump*, 850 F.2d at 945, the Second Circuit stated:

[A]n announcement of a withdrawal is effective when the offeror genuinely intends to abandon the goal of the original offer.... [W]here the goal has not been abandoned, a purported withdrawal followed by a "new" offer must be treated as a single continuing offer for purposes of the "best-price rule."

Whether formally separate tender offers should in fact be considered only one offer depends on these factors: "(1) are the offers part of a single plan of acquisition; (2) do the offers involve the purchase of the same class of security; and (3) are the offers made at or about the same time?" *Id.*

Taking these factors in order, it appears that Macfadden's two attempts to acquire Blair may be regarded by a jury as a single offer. First, both offers were directed at obtaining control of Blair. The first Offer to Purchase provides (p. 1): "The purpose of the Offer is to acquire the entire equity interest in the Company." The second Offer to Purchase similarly provides (p. 1): "The purpose of the Offer is to acquire control of the Company as the first step in acquiring the entire equity interest in the Company." Second, both offers were for Blair common stock. Third, although only one day separated the offers in question in *Field v. Trump*, it can not be said as a matter of law that the passage of a week means that the offers here were not made at or about the same time. Before its earlier offer expired, Macfadden knew of the $27 offer by Reliance which it would have to overcome and had announced that it was considering increasing its offer.

Accordingly, defendants' motion to dismiss Count II is denied.

## CONCLUSION

Defendants' motion to dismiss is granted with respect to Counts I and II, and denied with respect to Count II.