In re Verda Kathlyn **HARMON**, Debtor.

**STATE of Oregon, acting By and Through SAIF CORP., Appellant,**

v.

**Verda Kathlyn HARMON, Appellee.**

**BAP No. OR–93–2179–VHAs.**
**Bankruptcy No. 392–35798–H7.**
**Adv. No. 93–3422.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 22, 1995.

Decided Oct. 25, 1995.

Daniel H. Rosenhouse, Portland, OR, for Appellant.

Michael A. Gilbertson, Portland, OR, for Appellee.

Before VOLINN, HAGAN and ASHLAND, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### OVERVIEW

Appellant, State Accident Insurance Fund Corporation (SAIF), is liable to the debtor for compensation for a permanent partial disability she suffers due to a work-related injury. SAIF seeks to reduce the amount of the award by a sum equal to an excess of temporary disability payments which SAIF overpaid to the debtor on her claim.[1] On cross-motions for summary judgment, the bankruptcy court determined that the overpayments could not constitute a setoff under 11 U.S.C. § 553,[2] nor could SAIF deduct the overpayments by way of recoupment. It entered a declaratory judgment to that effect. We REVERSE.

### FACTS AND PROCEEDINGS BELOW

On May 30, 1987, Verda Kathlyn Harmon filed a claim under Oregon's Workers' Compensation Law, O.R.S. §§ 656.001 et seq., arising from an injury she received in a work-related accident on February 25, 1985. SAIF, which acts for the State of Oregon in regard to workers' compensation, responded to Ms. Harmon's claim by paying her temporary disability or "time-loss" payments. SAIF continued to make time-loss payments through April 15, 1992, for a total of $28,495. The State of Oregon ultimately determined that a substantial portion of this amount, $10,436.67, was an overpayment.

Under Oregon law, SAIF is entitled to "credit"[3] the amount of such overpayment against a permanent disability award. In

June 1992, SAIF issued Ms. Harmon a notice of case closure which stated that she had not sustained any permanent injury. The notice of closure commenced the state proceedings which led to a finding of overpayment referred to above. These proceedings were ongoing at the time debtor filed her chapter 13 petition on August 28, 1992.

SAIF's right to reduce the amount of any permanent disability award by the amount of excess time-loss payments was first presented to the bankruptcy court in a motion for civil contempt, filed by the debtor in December 1992. The motion alleged that SAIF had violated the automatic stay of § 362 and the permanent injunction of § 524 by asserting a right of recoupment against the debtor's right to an as yet undetermined permanent disability award. In the reply memorandum to the motion for civil contempt, debtor's counsel stated that, absent recoupment by SAIF, the debtor would be entitled to some $15,000 in permanent partial disability funds.

The debtor dismissed this proceeding voluntarily, but revisited the issue by way of a motion in which she sought a declaratory judgment that withholding of any portion of a permanent award would violate the stay. For various procedural reasons, the parties and the court determined that a ruling on the issue was not necessary at that time. Instead of entering a formal disposition of the motion, Bankruptcy Judge Hess drafted a letter opinion, dated June 22, 1993, which stated that in his view, if SAIF reduced a permanent disability award, it would violate the automatic stay. The court's analysis was based on its reading of *Lee v. Schweiker,* 739 F.2d 870 (3rd Cir.1984), a case that barred the government from offsetting or recouping

---

1. The debtor's disability award is approximately $15,000; SAIF overpaid her some $10,000 for time lost from work due to injury.

2. Unless otherwise stated, all references to "sections" hereinafter refer to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq.

3. Any determination or notice of closure made under this section may include necessary adjustments in compensation paid or payable prior to the determination or notice of closure, including disallowance of permanent disability payments prematurely made, crediting tempo-

rary disability payments against current or future permanent or temporary disability awards or payments and requiring the payment of temporary disability payments which were payable but not paid.
O.R.S. § 656.268(13) (1993 as amended 1995). The amended language allows SAIF to credit overpayments against temporary awards as well as permanent awards. The statutory language affecting the instant proceedings restricted such adjustments to permanent awards. Application of the amended language would not affect the outcome of the instant proceedings.

prepetition overpayments of social security benefits from benefits due to the debtor post-petition.

The debtor converted her case to one under chapter 7 on May 13, 1993, and it was assigned to Bankruptcy Judge Sullivan. On July 8, 1993, SAIF filed a complaint for declaratory relief to resolve whether it was entitled to credit its alleged overpayment of time-loss benefits against a permanent award to which the debtor might be entitled. The parties brought cross-motions for summary judgment. While articulating some reservations about the letter opinion, Judge Sullivan adopted its conclusion in favor of the debtor. The judgment provided that SAIF could not recover excess temporary disability payments from any future permanent disability award.[4] SAIF filed this timely appeal on September 22, 1993.

In February 1994, a BAP panel determined that the issue presented was not ripe for review because no permanent award had yet been established. Accordingly, it dismissed the appeal without prejudice to reinstatement. In November 1994, the Workers' Compensation Board of the State of Oregon issued its order. The Board adopted a state referee's permanent disability award and affirmed his finding that the debtor had become "medically stationary" on May 18, 1991. The Board authorized SAIF to "offset" the excess temporary disability payments as of that date against the permanent disability payment due. The debtor did not appeal the order of the Workers' Compensation Board. SAIF reinstated the instant appeal in January 1995.

## STANDARD OF REVIEW

 The doctrines of setoff and recoupment are equitable in nature, and their use by the bankruptcy court is permissive. As such, the court's decision is reviewed for an abuse of discretion. *In re Pieri*, 86 B.R. 208, 210 (9th Cir. BAP 1988).

## ISSUE PRESENTED

Whether the bankruptcy court abused its discretion by denying SAIF the right to deduct the amount of excess temporary disability payments made prior to the filing of the bankruptcy petition from the debtor's permanent disability award.

## DISCUSSION

### I.

Setoff and recoupment originated as equitable rules of joinder to expand the strict rules of pleading under the common law, allowing creditors to offset mutual and reciprocal debts with the debtor. In bankruptcy, the doctrine of setoff is governed by § 553,[5] and its application is restricted by the automatic stay of § 362(a)(7).[6]

Analysis of the difference between setoff and recoupment in a given transaction does not easily lend itself to a bright-line resolution. Compare, for example, the holding of *In re California Canners and Growers*, 62 B.R. 18 (9th Cir. BAP 1986), with that of *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir. 1986). *California Canners* concluded that various claims arising under an ongoing distribution agreement constituted a series of separate transactions for the purpose of determining whether recoupment could be applied and, accordingly, refused to allow recoupment between pre- and post-petition claims. *B & L Oil* reached the opposite result under similar circumstances and allowed recoupment of prepetition overpayments from post-petition purchases per-

---

4. The parties agreed to proceed with the state administrative process, allowing SAIF to establish the fact of overpayment.

5. Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553(a).

6. Section 362 stays, *inter alia:*

the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor. . . .

11 U.S.C. § 362(a)(7).

formed under an ongoing oil purchase agreement.

■ Although the terms have come to be used somewhat interchangeably, there are distinctions which remain relevant in bankruptcy. Setoff allows adjustments of mutual debts arising out of separate transactions between the parties. Recoupment, on the other hand, involves a netting out of debt arising from a single transaction. To invoke setoff, § 553 requires that each of the mutual debts arise before commencement of the case. In recoupment, the elements of the debt may arise either before or after the commencement of the case.

■ Both doctrines have application in the bankruptcy setting, where the distinctions between them continue to be valid:

> [T]he doctrine of recoupment can clearly be distinguished from setoff in a bankruptcy setting. It has no greater effect than a defense to a claim, and hence should not be subject to the limitations on setoff. A recoupment claim arises out of the same transaction that forms the basis of the plaintiff's cause of action. Its function is to reduce the amount demanded, but only to the extent of the plaintiff's claim. "In other words, recoupment goes to the justice of plaintiff's claim and no affirmative judgment for any excess over the claim of plaintiff can be awarded thereon." Therefore, allowing recoupment will not affect property of the estate other than the subject claim.
>
> Furthermore, the invocation of the recoupment doctrine promotes no preference problem. It is applied when there are countervailing claims arising from the same transaction "strictly for the purpose of abatement or reduction...." In effect, the application of recoupment goes to the equity of the claim. It provides for the adjudication of the just apportionment of

liability relative to a dispute regarding a singular transaction.

*In re Hiler,* 99 B.R. 238, 243 (Bankr.D.N.J. 1989) (internal citations omitted). *See also In re Clowards, Inc.,* 42 B.R. 627, 628 (Bankr.D.Idaho 1984).

■ Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge. *See Brown v. General Motors Corp.,* 152 B.R. 935 (W.D.Wis. 1993), where the District Court held that the right of a private employee benefit plan to reduce its payments to a bankrupt debtor who was a participant in the plan in order to recover past overpayments was a right of recoupment and not a claim. "Because of its unique nature as a limited equitable defense the right of recoupment does not constitute a claim within the meaning of 11 U.S.C. § 101(5)...." *Id.* at 938.

## II.

■ On the facts here, two awards were made, time-loss and permanent disability: on the one hand, income lost from work interruption, and on the other, loss of future income-earning capacity based on permanent disability. Each liability was asserted by the debtor pre-petition and were treated independently. The trial court concluded that the two awards should be considered as separate or independent transactions precluding application of recoupment. This analysis focused on the sequelae of the injury rather than on their common origin, which was the work-related injury.[7] While there may be a facial issue as to whether the obligations between the parties arose from a single transaction thereby warranting recoupment, logic requires the conclusion that both claims flow from the same prepetition injury. Thus, whatever rights or remedies the debtor had, accrued prepetition. Further, the court

---

7. The instant circumstances can be compared to and distinguished from various other benefit schemes, such as that presented by *In re Thompson,* 182 B.R. 140, 145 (Bankr.E.D.Va.1995), where the creditor sought to recoup an excess of disability payments from retirement benefits owed to the debtor. Although both obligations were governed by one over-arching agreement, these liabilities clearly arose from separate and independent transactional bases. Accordingly, the *Thompson* court did not permit recoupment. However, the court determined that the debtor's disability claims and retirement benefits both arose on the date he joined the police force. Therefore, both were prepetition claims and setoff was appropriate. *Id.* at 153.

should view the claims of the parties as perceived by the unitary perspective of the Oregon statute, which created the remedies for these rights. *See Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law").

The liabilities at issue in the instant case are governed by a statutory plan which provides coverage to all workers in the State of Oregon for work-related injuries. The State of Oregon intended to provide indemnity for employee injuries in the work-place through a comprehensive statute governing the rights and liabilities of employers and their employees. *See* O.R.S. § 656.012.[8]

*Lee v. Schweiker,* referred to by the bankruptcy court below, is inapposite. There, the court reasoned that post-petition social security payments were in the nature of future earnings, and, therefore, constituted a post-petition asset of the debtor not subject to offset by a pre-petition claim. The court also reasoned that where a federal social welfare statute was involved, conventional rules relating to recoupment incident to contractual relationships were inapplicable. Here we are dealing with a state statute which specifically provides for such a remedy.

## CONCLUSION

The debtor's entitlement to both of the awards arose with and are based upon her initial injury. The overpayments constitute a pre-existing charge against the debtor's right to her permanent disability award, which came into being pre-petition at the time of the original injury. Thus, either setoff or recoupment should have been permitted.

8. Findings and policy.
 (1) The Legislative Assembly finds that:
 (a) The performance of various industrial enterprises necessary to the enrichment and economic well-being of all the citizens of this state will inevitably involve injury to some of the workers employed in those enterprises; and
 (b) The method provided by the common law for compensating injured workers involves long and costly litigation, without commensurate benefit to either the injured workers or the employers, and often requires the taxpayer to provide expensive care and support for the injured workers and their dependents.

The order of the bankruptcy court is REVERSED so that judgment may be entered which would entitle SAIF to deduct excess temporary disability payments from the debtor's permanent disability award.

. . . .

(2) In consequence of these findings, the objectives of the Workers' Compensation Law are declared to be as follows:

. . . .

(b) To provide a fair and just administrative system for delivery of medical and financial benefits to injured workers that reduces litigation and eliminates the adversary nature of the compensation proceedings, to the greatest extent practicable.

O.R.S. § 656.012 (1993, amended 1995). *See also* O.R.S. § 656.018 (1993), restricting employer liability and employee remedies.