### In re HEFFERNAN MEMORIAL HOSPITAL DISTRICT, dba Calexico Hospital, Debtor.

### Bankruptcy Nos. 95–10251–H9, RS–03715.

United States Bankruptcy Court, S.D. California.

Jan. 16, 1996.

Joseph C. La Costa, Jeffrey D. Goetz, San Diego, CA, for Debtor.

Alan D. Bersin, U.S. Attorney, Paul Beckhart, Ass't U.S. Attorney, San Diego, CA, for HHS & HCFA.

Robert Jay Moore, et al., Murphy, Weir & Butler, San Francisco, CA, for LaSalle National Bank and LaSalle Bank of Lisle.

## AMENDED MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

The United States Department of Health and Human Services ("HHS"), which through its component, the Health Care Financing Administration ("HCFA"), administers the Federal Health Insurance for the Aged and Disabled program ("Medicare"), moves this Court for an order that it may apply outstanding payments for pre-petition claims submitted by the Debtor to reduce the Debtor's outstanding pre-petition overpayment, in accordance with Medicare's statutes and regulations, the common law right of recoupment, and 11 U.S.C. § 553.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to 28 U.S.C. § 157(2)(G).

### APPLICABLE MEDICARE LAW

In order to receive payment for services rendered to a Medicare patient, a "Part A" hospital provider must meet the conditions of participation prescribed by Title XVIII of the Social Security Act and other regulations. 42 U.S.C. § 1395x(e); 42 C.F.R. Part 482. The provider then becomes eligible to execute a provider agreement. *See* 42 U.S.C. § 1395cc; 42 C.F.R. Part 489. The Medicare program is administered with the assistance of fiscal intermediaries, such as Blue Cross of California.

The fiscal intermediary is authorized to make interim payments of Part A benefits during the fiscal year based on an estimate of the provider's costs for a given period. 42 C.F.R. §§ 413.60, 413.64. The Medicare statute requires such periodic payments to be made before an audit is conducted to determine the amount of reimbursement due under applicable law. 42 U.S.C. § 1395g(a) (1988). Medicare makes initial payments on an estimated basis, audits the payments at the close of a defined fiscal period known as a "cost year," relying on the cost report

submitted by the provider, and corrects any underpayment or overpayment by making a corresponding lump-sum adjustment or adjustments in subsequent Medicare reimbursements. *Id.*

### FACTS

Debtor is a 34–bed hospital located in Calexico, California. Debtor has been a "Part A" Medicare provider since the mid–1960's and currently operates under a Medicare Provider Agreement, dated April 23, 1993. The Agreement has provided approximately 40% of Debtor's operating revenue over the last several years.

■ Debtor filed for bankruptcy protection on September 21, 1995, under Chapter 9 of the Bankruptcy Code.[1] On or about September 26, 1995, the fiscal intermediary determined that Debtor was overpaid $79,198.00 in Medicare payments for the period between July 1, 1993 and June 30, 1994. Accordingly, HHS, through the fiscal intermediary, withheld subsequent reimbursements for pre-petition claims totalling $33,799.76 to apply to Debtor's pre-petition overpayment while seeking Court approval for recoupment/setoff.[2]

Specifically, HHS seeks express court approval for the recoupment of a pre-petition debt owed by Debtor to the Medicare program from pre-petition reimbursements recently determined to be due to Debtor. HHS argues that the pre-petition overpayment in fiscal 1994 arose out of the same transaction as the claims for pre-petition services in fiscal 1995.

Debtor argues that HHS is not entitled to recoupment because the overpayment is not part of the same transaction as the claims for reimbursement.

### DISCUSSION

■ Recoupment is an equitable doctrine, not expressly recognized under the Bankruptcy Code but preserved through judicial decisions. *See, e.g., Lee v. Schweiker,* 739 F.2d 870, 875 (3d Cir.1984). Recoupment is a mechanism for a creditor to calculate the proper liability on the amounts owed, by allowing a creditor to offset obligations which arise from the same transaction and which are essentially a defense to the debtor's claim rather than a mutual obligation. *In re B & L Oil Co.,* 782 F.2d 155, 158 (10th Cir.1986); 4 *Collier on Bankruptcy* ¶ 553.03, at 553–15 (15th ed. 1991). The essential element for recoupment is that the debts must arise out of the "same transaction." *In re Yonkers Hamilton Sanitarium, Inc.,* 34 B.R. 385, 386 (Bankr.S.D.N.Y.1983); 4 *Collier on Bankruptcy* ¶ 553.03, at 553–15 (15th ed. 1991).

In this case, HHS argues that recovery of Debtor's Medicare overpayment falls within the common law recoupment doctrine because the pre-petition overpayment arose out of the same transaction as the claims for pre-petition services. Specifically, HHS argues that the Debtor and HCFA performed for several years under the Medicare Provider Agreement, which provides for virtually continual audits extending over a period of several years and adjustments for prior period overpayments and underpayments against ongoing interim payments.[3]

Debtor argues, however, that overpayments in fiscal 1994 are not part of the same transaction as claims for reimbursement in fiscal 1995. Debtor relies on *In re University Medical Center,* 973 F.2d 1065, 1079 (3d Cir.1992), wherein the Third Circuit held that 1985 overpayments of Medicare funds arose from different transactions than 1988 claims

---

1. The Calexico Hospital is a municipality under 11 U.S.C. § 109(c).

2. Obtaining relief from the automatic stay for recoupment is not required, however, as most courts recognize that the automatic stay does not apply to recoupment. *See, e.g., University Medical Center,* 973 F.2d 1065, 1079 (3d Cir.1992); *In re Holford,* 896 F.2d 176 (5th Cir.1990); *In re Midwest Serv. and Supply Co., Inc.,* 44 B.R. 262 (D.Utah 1983); *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427, 435 (Bankr.S.D.N.Y.1982).

Further, HHS is not required to release funds to Debtor while it evaluates its right to setoff and seeks court permission to setoff. *Citizens Bank of Maryland v. Strumpf,* — U.S. —, —, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995).

3. As previously noted, Debtor is operating under a Medicare Provider Agreement dated April 23, 1993. Accordingly, the overpayment and claims for reimbursement have occurred under the same contract.

for reimbursement. The *University Medical* court treated each cost year as a separate transaction and found the issue of differing cost years dispositive. *Id.* at 1081. Debtor argues that because HHS is seeking to recoup 1994 overpayments from 1995 claims for reimbursements, *University Medical* applies and precludes recoupment in this case.

After due consideration, the Court respectfully disagrees with the analysis in *University Medical.*

The Medicare Provider Agreement is a contract[4] providing for advance payments based on estimates and expressly permitting the withholding of overpayments from future advances. Most recoupment cases involve precisely the type of contract involved in this case—one providing for advance payments based on estimates of what ultimately would be owed subject to later correction. *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986) (*citing In re Yonkers*, 22 B.R. 427, 433 (Bankr.S.D.N.Y.1982), *aff'd*, 34 B.R. 385 (S.D.N.Y.1983)); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tenn.1981); *In re Midwest Service and Supply Co.*, 44 B.R. 262 (D.Utah 1983); *Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984).

In these cases, recoupment was allowed because the claims arose from a single contract, thereby satisfying the "same transaction" requirement for recoupment. Recoupment is justified in the single contract cases because "there is but one recovery due on a contract, and that recovery must be determined by taking into account the mutual benefits and obligations of the contract."[5] *In re Holford*, 896 F.2d 176, 178 (3d Cir.1990); *In re B & L Oil Co.*, 782 F.2d 155, 158

(10th Cir.1986). This Court concurs with the analysis of *B & L Oil* and cases cited therein allowing recoupment.

In *B & L Oil*, the debtor executed an oil division order in favor of plaintiff Ashland Petroleum. Under the order, Ashland obtained the right to purchase unspecified amounts of crude that debtor produced. Ashland overpaid in August of 1982 for oil produced and delivered in June of 1982. Debtor filed for Chapter 11 relief in September of 1982. Ashland then withheld payments owed to debtor for post-petition oil deliveries. *Id.*

The bankruptcy court held that recoupment was improper because the debts did not arise from the same transaction. The district court affirmed. Ashland appealed contending that the district court erred in finding that a division order constitutes a series of separate contracts precluding equitable recoupment. The Tenth Circuit reversed. *Id.*

The Tenth Circuit had no difficulty holding that the oil division order was a single contract. *Id.* at 158. Further, the court found that the month-to-month purchases of oil arose out of the same transaction for purposes of applying the recoupment doctrine in bankruptcy. In fact, the court reasoned that even where the obligations are easily separable and independently determinable (i.e., month-to-month deliveries and invoices for same), overpayments made under a single contract are much like advance royalties to a writer or musician, or Medicare overpayments to a hospital. *Id.* at 158–9. Accordingly, the Tenth Circuit found that the recoupment doctrine properly applied.

---

**4.** A Medicare provider agreement is an executory contract. The Bankruptcy Code does not define "executory contract," but courts have generally defined such a contract as one under which performance is due to some extent on both sides. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1193 n. 6, 79 L.Ed.2d 482 (1984). *See also, In re University Medical Center*, 973 F.2d 1065, 1075 (3d Cir.1992) ("A Medicare provider agreement easily fits within th[e] definition [of executory contract]").

In fact, Debtor has already obtained an extension on the time to assume or reject the Provider Agreement, further evidencing treatment of the Provider Agreement as an executory contract.

**5.** Similarly, other courts have generally held that Medicare adjustments of ongoing payments to recover prior overpayments are properly characterized as recoupment. *See, e.g., In re Advanced Prof. Home Health Care*, 94 B.R. 95, 96–97 (E.D.Mich.1988); *In re Neuman*, 55 B.R. 702, 706 (S.D.N.Y.1985); *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd*, 34 B.R. 385 (S.D.N.Y.1983), *In re Monsour Med. Ctr.*, 11 B.R. 1014, 1018 (W.D.Pa.1981); *In re Visiting Nurse Ass'n of Tampa Bay, Inc.*, 121 B.R. 114, 119–20 (Bankr.M.D.Fla.1990).

The Ninth Circuit Bankruptcy Appellate Panel recently spoke on this issue and provides further support of the analysis in *B & L Oil.* In *In re Harmon,* 188 B.R. 421 (9th Cir. BAP 1995), the BAP reversed the bankruptcy court's refusal to allow recoupment or setoff of pre-petition overpayments for temporary disability against a pre-petition claim for a permanent disability award. The BAP specifically addressed the doctrine of recoupment in bankruptcy and held that where two claims under the Oregon workers compensation statute arose from the same pre-petition injury, the court should view the claims as arising from the same transaction and allow recoupment. *Id.*

In *Harmon,* under Oregon law, the State Accident Insurance Fund Corporation ("SAIF") was entitled to credit overpayments of temporary disability or "time-loss" payments against a permanent disability award once such award was finally determined. The bankruptcy court concluded that the two awards, time-loss and permanent disability, should be considered separate and independent transactions, thereby precluding application of recoupment.

In reversing the bankruptcy court, the BAP focused on the common origin of the two awards and determined that logic required a conclusion that both claims flowed from the same pre-petition injury, thus, the debtor's rights or remedies under the Oregon statute had accrued pre-petition. The BAP noted that the court should view the claims of the parties "as perceived by the unitary perspective of the [ ] statute, which created the remedies ..." *Id.* at 426. Accordingly, the comprehensive nature of the statute, governing the rights and liabilities of employers and their employees, provided a sound basis for application of the recoupment doctrine.

Debtor's reliance on *In re California Canners and Growers,* 62 B.R. 18 (9th Cir. BAP 1986) is misplaced.[6]

■ The Debtor here is paid under the Provider Agreement in an ongoing, continuous stream of interim payments which are periodically adjusted to reflect over/under-payments. The Provider Agreement itself precludes a finding of separate and distinct transactions because the Agreement provides for continual "netting out" which inextricably links the interim payments with subsequent adjustments.

Like the debtor in *B & L Oil* and, more importantly, like the debtors in the Medicare recoupment cases cited above, Debtor operates under a contract providing for advance payments based on estimates subject to later corrections. Further, as the workers' compensation statute did in *Harmon,* the Medicare statute, governing the rights and liabilities of providers and HHS, provides a sound basis for application of the recoupment doctrine. Accordingly, HHS may recoup overpayments from Debtor's claims for reimbursements.

This Memorandum Decision is in lieu of findings of fact and conclusions of law. HHS is directed to prepare an order consistent with this opinion within ten (10) days of the date of entry of this Memorandum Decision.

■

---

6. The BAP's decision in *Canners* clearly turned on the fact that one transaction occurred pre-petition and the other occurred post-petition. Thus, *Canners* is easily distinguished from this case where Medicare seeks to recoup pre-petition overpayments from pre-petition claims for reimbursement.