222 B.R. 804 (1998)
In re AHN HOMECARE, L.L.C., Debtor.
AHN HOMECARE, L.L.C., Debtor,
v.
HOME HEALTH REIMBURSEMENT AND HEALTH CARE FINANCING ADMINISTRATION, Defendants.
Bankruptcy No. 397-81166-RCM-11, Adversary No. 397-3565.
United States Bankruptcy Court, N.D. Texas, Dallas Division.
June 10, 1998.
*805 Gary Trebert, Irving, TX, for Plaintiff.
Paula Mastropieri-Billingsley, Dallas, TX, for Defendant.

MEMORANDUM OPINION
ROBERT MCGUIRE, Chief Judge.
The Secretary of the United States Department of Health and Human Services ("HHS") filed this motion to dismiss the above-styled adversary filed by AHN Homecare, LLC ("AHN"). By agreement of counsel, the motion was decided on the basis of the pleadings and briefs before the court. Following are the Court's Findings of Fact and Conclusions of Law pursuant to Bankr.R. 7052.
In considering Defendant's motion, the Court only considers the pleadings. 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 1356 at 298 (2d ed.1990); Mahone v. Addicks Utility Dist. of Harris Co., 836 F.2d 921, 935 (5th Cir.1988). Federal Rule of Civil Procedure 10(c) and Federal Rule of Bankruptcy Procedure 7010 define pleadings to include written documents which act as exhibits to pleadings. Accord Feder v. MacFadden Holdings, Inc., 698 F.Supp. 47, 50 (S.D.N.Y.1988).

I. Statutory and Regulatory Background
Part A of the Medicare Act, established by Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq., in relevant part provides for payment on behalf of eligible beneficiaries for certain home health services furnished by home health agencies. 42 U.S.C. § 1395d. The Secretary of the United States Department of Health and Human Services ("HHS") administers the Medicare Program and has delegated this function to the Health Care Financing Administration ("HCFA"), a component of HHS.
A home health agency that meets Medicare certification standards may enter into a provider agreement with HCFA, 42 U.S.C. § 1395cc, and be reimbursed for the reasonable cost of covered services, as determined under detailed statutory and regulatory criteria. 42 U.S.C. §§ 1395f(b), 1395h, 1395x(v); 42 C.F.R. § 413.1 et seq. HHS's payment scheme pays providers periodically on an interim basis on estimates of the provider's projected cost for the entire year. 42 C.F.R. § 413.64(b), (e). After interim payments are made, audits are conducted that may reveal any under- or overpayments made to providers. Such under- or overpayments are corrected through ongoing adjustments in subsequent Medicare reimbursements. 42 C.F.R. § 405.371(a)(2), 3413.64(e), (h)(7). HHS is allowed to adjust payments to providers as is necessary to properly balance payments to providers. 42 U.S.C. § 1395g(a). The review of the interim payments is conducted by a fiscal intermediary, generally a private insurance company. 42 C.F.R. § 413.20(b), 413.24(f).
Congress has provided an exclusive avenue for judicial review of reimbursement issues effecting providers. Upon an intermediary's final determination as to the total amount of reimbursement due, a provider may request a hearing with respect to such determinations and obtain a decision from the Provider Reimbursement Review Board. ("PRRB") 42 U.S.C. § 1395oo(a); 42 C.F.R. § 405.1835. The decision of the Review Board is final unless the HHS reverses, affirms, or modifies the PRRB decision on its own motion within sixty days of the decision. 42 U.S.C. § 1395aa(f)(1). Only after receiving a decision by the PRRB or HHS may the provider obtain judicial review of an adverse decision in a federal district court, 42 U.S.C. § 1395aa(f)(1), pursuant to the applicable provisions of the Administrative Procedure Act, 5 U.S.C. § 701 et seq. See also Homewood Prof'l Care Ctr., Ltd. v. Heckler, 764 F.2d 1242, 1248 (7th Cir.1985). Under Title 42 U.S.C. § 405(h) of the Social Security Act, made applicable to the Medicare Act by 42 U.S.C. § 1395ii and 42 U.S.C. § 1395oo(f)(1), the findings and decision of HHS are binding and no decisions are reviewable except after administrative exhaustion and a final decision provided for in 42 U.S.C. § 405(g). Bodimetric Health Services, Inc. v. Aetna Life & Cas., 903 F.2d 480, 483 (7th Cir.1990) cert. denied, 498 U.S. 1012, 111 S.Ct. 579, 112 *806 L.Ed.2d 584 (1990); Homewood, 764 F.2d at 1247, 1252; In re St. Johns Home Health Agency, Inc., 173 B.R. 238, 243 (Bankr. S.D.Fla.1994).

II. Factual Background
AHN participated in the Medicare program and received reimbursement for services provided to eligible beneficiaries since 1992 when it executed its provider agreement with the HCFA. During the latter part of 1996, AHN was subject to an audit and review. Based on a random sample of 100 claims filed by AHN with the fiscal intermediary Palmetto, HHS determined that 40% of AHN claims were not properly payable under the Medicare program.
In a letter dated April 15, 1997, Palmetto informed AHN that the review resulted in the determination of a $2,420,782 overpayment. Palmetto provided AHN with its administrative appeal rights and offered AHN the opportunity to repay the amount owed in one lump sum or to repay it over an extended period of time, if it could demonstrate that the payback would be made with non-Medicare funds. AHN was unable to do either, so Palmetto informed AHN of its intent to recover the overpayment by "recouping" the amount owed from current interim payments otherwise due AHN. Palmetto began recoupment in late November.
On December 3, 1997, AHN filed for protection under Chapter 11 of the Bankruptcy Code. Palmetto continued to attempt recoupment after the petition date, however, upon discovering its error, Palmetto refunded those monies recouped after the petition date. [HHS Motion to Dismiss, p. 7] The present adversary was filed a few days after the initial filing of the petition, seeking a temporary restraining order, the turnover of assets of the estate, and a declaratory judgment as to the amount of reimbursement AHN owes HHS. AHN further complains that HHS violated the stay. HHS responds that its attempted recoupment is not a stay violation under § 362.
On January 14, 1998, HHS filed this motion to dismiss. Upon filing of this motion, HHS discovered that AHN had ceased doing business as of December 31, 1997. [Ex. 1 to HHS Response.] The next day, on January 15, 1998, the government again began suspending payments to which the Debtor was otherwise entitled, placing an "administrative hold" on those interim payments it still had in its possession. On January 20, 1998, HCFA informed the Debtor that on February 9, 1998, they would recoup the money held in administrative hold and apply it to the debt AHN owed as a result of the overpayment. Between January 15, the first day of the "administrative hold," and February 9, 1998, the day of the intended recoupment, Palmetto administratively held approximately $190,000 of payments for medical services that the Debtor provided for Medicare beneficiaries. On February 6, 1998, HHS contacted the Debtor's attorney to inquire as to whether the Debtor would ask this court to stop the application of the funds on administrative hold to the overpayment. HHS contends that the Debtor's attorney informed them that he would not ask the court to intervene. On February 9, 1998, Palmetto ceased the administrative hold and actually recouped said funds.

III. Pleadings of the Case and Motion to Dismiss
In this court's view, AHN's pleadings and prayer for relief raise two distinct and separate causes of action. First, AHN's adversary complaint seeks a temporary restraining order, the turnover of assets of the estate, and a declaratory judgment as to the amount of reimbursement AHN owes HHS. The basis for each of these requests for relief originates from the dispute over how much money AHN was overpaid by HHS ("The Overpayment Dispute"). Second, AHN complains in its pleadings that HHS and Palmetto violated the automatic stay by attempting to recover the alleged overpayments ("Automatic Stay Violation"). While the violation of the automatic stay relates to the dispute about overpayments, the basis for that cause of action originates from the actions taken by HHS and Palmetto which occurred after AHN filed bankruptcy. These two causes of action will be dealt with separately.
HHS's motion to dismiss argues three independent justifications for dismissal: 1) the controversy of the adversary is not yet ripe; *807 2) the bankruptcy court lacks jurisdiction over the subject matter of this adversary; and 3) HHS may not be sued in this adversary since they have not waived sovereign immunity.

IV. Jurisdiction
A. The Overpayment Dispute
HHS argues that because AHN is asking this court for a declaratory judgment to determine the amounts due and owing between the parties, such determination must be made pursuant to the Medicare Act, 42 U.S.C. § 1395 et seq., and the regulations promulgated thereunder. Pursuant to 42 U.S.C. § 405(h), the decision of the Secretary of the HHS is not subject to judicial review before all administrative remedies have been exhausted. Only after all forms of administrative review are exercised can the district court or bankruptcy court review the Secretaries' determination.
AHN contends that this court has jurisdiction despite the provisions of § 405(h) because 28 U.S.C. § 1334 gives to the district courts, and thus the bankruptcy courts, original and exclusive jurisdiction of all cases under Title 11, exclusive jurisdiction over all property of the debtor of the estate, and original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11.
Section 1334 appears to grant jurisdiction to this court and § 405(h) appears to prohibit this court's jurisdiction. The issue facing this court is whether the court has jurisdiction to determine amounts due at this time because this is a bankruptcy matter or whether it does not have jurisdiction because it is a Medicare dispute.
42 U.S.C. § 405(h), provides that:
[t]he findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.
42 U.S.C. § 405(h). (emphasis added).
AHN argues that while the third sentence of § 405(h) expressly bars actions under 28 U.S.C. § 1331 (federal questions jurisdiction) or § 1346 (United States as defendant) "to recover on any claim" arising under the Medicare Program, such a restriction does not apply to § 1334 actions. AHN argues that because § 1334 provides an independent grant of jurisdiction to the bankruptcy courts, this court has jurisdiction over this adversary. See In re University Medical Center, 973 F.2d 1065 (3rd Cir.1992); In re Town & Country Home Nursing Services, Inc., 963 F.2d 1146 (9th Cir.1991). When there is an independent grant of jurisdiction to the courts, it is not necessary or required for the parties to exhaust all available administrative remedies before judicial review can take place. Id. HHS counters that the absence of a reference to § 1334 in the language of § 405(h) does not mean that Congress intended to allow Medicare disputes to be resolved in the bankruptcy courts, but rather its omission was inadvertent, resulting from a poorly drafted technical amendment that intended no substantive change to the statute.
The most extensive and detailed analysis of the jurisdictional intersection of § 405(h) and § 1334 was conducted by the court in In re St. Mary Hospital, 123 B.R. 14 (E.D.Pa. 1991). St. Mary involved a home health provider that filed bankruptcy once an audit by HHS revealed overpayments. After filing Chapter 11 relief, the trustee filed an counterclaim with the bankruptcy court seeking declaratory relief and turnover of property. HHS filed a motion to dismiss contending that St. Mary Hospital had not exhausted all of its administrative remedies as provided under the Medicare Act, thus such action in the bankruptcy court was precluded under § 405(h). The court turned to the legislative history behind § 405(h) and § 1334 and stated:
When enacted in 1939, section 405(h) barred all actions brought pursuant to 28 U.S.C. § 41, including the grant of bankruptcy jurisdiction to the district court under *808 section 41(19). See Social Security Act Amendments of 1939, Pub.L. No 379, § 205(h), 53 Stat. 1360, 1371 (1939); 42 U.S.C. § 405(h) (1982) (codification note). Certainly, if this suit had been brought then, it would have been barred. When section 41 was replaced with the current jurisdictional provisions, sections 1331 to 1348, 1350 to 1357, 1359, 1397, 2361, 2401 and 2401 of Title 28, the council for the Office of Law Revision recommended to Congress that it modify 405(h) to its present form. Congress adopted the proposed amendments in the Deficit Reduction Act of 1984, Subtitle D, Technical Corrections, using the following language: "section 205(h) [42 U.S.C. § 405(h)] of such Act is amended by striking out `section 24 of the Judicial Code of the United States' [codified as section 41 of Title 28] and inserting in lieu thereof `section 1331 or 1346 of title 28, United States Code,'." Pub.L. No. 98-369, 98 Stat. 1162 § 2663(a)(4)(D). Congress also cautioned the courts not to interpret the "Technical Corrections" as substantive changes:
[T]he amendments made by section 2663 shall be effective on the date of the enactment of this Act; but none of such amendments shall be construed as or affecting any right, liability, status, or interpretation which existed (under the provisions of law involved) before that date.

Id. at § 2664(b) (emphasis added). As the court in Bodimetric Health Services v. Aetna Life & Casualty, 903 F.2d 480, 489 (7th Cir.1990), stated:
In this section Congress clearly expressed its intent not to alter the substantive scope of section 405(h). Because the previous version of section 405(h) precluded judicial review of diversity actions, so too must newly revised section 405(h) bar these actions. Any other interpretation of this section would contravene section 2664(b) by `changing or affecting [a] right, liability, status, or interpretation' of section 405(h) that existed before the Technical Corrections were enacted.
Bankruptcy actions, like diversity actions, were barred under the prior codification of section 405(h) and remain so today.
St. Mary Hospital, 123 B.R. at 17. Accord St. Johns, 173 B.R. at 244; In re Upsher Laboratories, Inc., 135 B.R. 117, 119-120 (Bankr.W.D.Mo.1991); In re Home Comp Care, Inc., v. U.S. Dept. Of Health, 221 B.R. 202, (N.D.Ill.1998).
Such a reading of § 405(h) and § 1334 is fully consistent with the intent of Congress. As the court in St. Mary stated:
a broad reading of section 405(h) puts its interpretation in accord with Congress' intent to permit the Secretary in Medicare disputes to develop the record and base decisions upon his unique expertise in the health care field. The misfortune that a provider is in bankruptcy when he has a reimbursement dispute with the Secretary should not upset the careful balance between administrative and judicial review. . . . [It] must be remembered that section 405(h) does not foreclose judicial review of administrative decisions, but merely postpones judicial review until the carefully prepared administrative system is given an opportunity to work.
St. Mary, 123 B.R. at 17. (Citing Weinberger v. Salfi, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)).
The Ninth Circuit opinion in In re Town & Country Home Nursing Services, Inc., 963 F.2d 1146 (9th Cir.1992), disagreed with the analysis followed by St. Mary and other like cases. In Town & Country, the court's decision primarily addressed questions as to the effect of § 106 of the Bankruptcy Code on waiver of sovereign immunity. Id. at 1149-1154. Only briefly did the court entertain questions as to the relationship between § 405(h) and § 1334. The Ninth Circuit looked summarily at the language of § 405(h) and stated that since § 1334 is not specifically mentioned as are §§ 1331 and 1346, there is no prohibition against a bankruptcy court exercising jurisdiction before all administrative remedies are exhausted. Id. at 1155. The court concluded that:
The rationale underlying section 1334's broad jurisdictional grant over all matters conceivably having an effect on the bankruptcy *809 estate is clear. This section allows a single court to preside over all of the affairs of the estate, which promotes a "congressional-endorsed objective: the efficient and expeditious resolution of all matters connected to the bankruptcy estate." In re Fietz, 852 F.2d 455, 457 (9th Cir.1988) (citing H.R.Rep. No, 595, 95th Cong., 1st Sess. 43-48, reprinted in 1978 U.S.Code Cong. & Admin. News 5963, 6004-08). The language of section 1334(b) grants jurisdiction to the district courts, and therefore to the bankruptcy court, over civil proceedings related to bankruptcy and accords with "the intent of Congress to bring all bankruptcy related litigation within the umbrella of the district court, at least as an initial matter, irrespective of congressional statements to the contrary in the context of other specialized litigation." 1 L. King, Collier on Bankruptcy, ¶ 3.01[1][c][ii], at 3-22 (15th ed.1991).
Id. at 1155.
While the Town & Country correctly describes the Congressional principles behind creating the bankruptcy courts as a forum where varied and multi-faceted disputes may be resolved in an expeditious fashion, the decision completely ignores the legislative history behind § 405(h). It also ignores the Congressional purpose behind the complex and balanced administrative review provided for under the Medicare Act as explained by St. Mary. In this court's view, the better reading of § 405(h) and § 1334 holds that § 405(h) intends to have the administrative remedies exhausted before judicial review is taken by a bankruptcy court when the matter is one which "arises under" the Medicare Act. As stated by the St. Johns court, "The filing of a bankruptcy petition does not and should not create a shortcut to judicial review of administrative decisions otherwise subject to exhaustion requirements." St. Johns, 173 B.R. at 243.
Such an interpretation of § 405(h) and § 1334 would also comport with the logic behind the Fifth Circuit decision in MCorp Financial, Inc. v. Board of Governors, 900 F.2d 852 (5th Cir.1990) aff'd in part, rev'd in part, Board of Governors v. MCorp Financial, 502 U.S. 32, 112 S.Ct. 459, 116 L.Ed.2d 358 (1991). In MCorp, the Fifth Circuit was confronted with a specialized banking statute that prohibited judicial interference with administrative proceedings, 12 U.S.C. § 1818(i), and the general grant of jurisdiction afforded to the bankruptcy courts under § 1334. It was argued that § 1334, which was enacted subsequent to § 1818(i), granted to the bankruptcy courts jurisdiction over the matter even though § 1818(i) seemed to preclude the involvement of the bankruptcy court because the legislative history of § 1334 explained the broad grant of bankruptcy jurisdiction conferred by § 1334. The Fifth Circuit disagreed, holding that such an interpretation would have the effect of "impliedly repealing" § 1818(i). An implied repeal of a statute is highly disfavored and will only be held to have occurred if there is a "positive repugnancy" between two statutory provisions. Id. at 855-856. The court concluded,
Absent some clear intention to the contrary, however, a specific statute will not be controlled by a general one regardless of the priority of enactment. Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). Congress revealed no intent to supersede the specific jurisdictional bar of § 1818(i) in the legislative history of the Bankruptcy Reform Act, nor in the recently enacted [FIRREA]. We decline to imply any affirmative powers to the bankruptcy court from Congress' failure to act in this area.
Id. at 856.(citations omitted).
As in MCorp, the legislative history of § 1334 evidences no intention to make its general provisions override the specific provisions enumerated in § 405(h). Given the Fifth Circuit's reasoning in MCorp, this court declines to follow Town and Country, but will follow instead the decisions of St. Mary Hospital, St. Johns Home Health Agency, Home Comp Care, and Bodimetric. Accordingly, this court finds that the cause of action and the requests for relief based on the alleged overpayments to AHN "arise under" the Medicare Act. Section 405(h) intended to preclude bankruptcy jurisdiction over matters "arising under" the Medicare Act until *810 all administrative remedies had been exhausted. Since those remedies have not been exhausted, this court does not have jurisdiction to hear those matters or to determine the amounts due and owing between the parties.
B. Automatic Stay violation
The second cause of action presented by this adversary is based on AHN's contention that HHS and Palmetto violated the automatic stay by attempting to recoup interim payments it had administratively held. Unlike the first cause of action, the court finds it has jurisdiction to adjudicate the alleged violation of the automatic stay. The basis for such a determination stems from the definition of "arising under" contained in § 405(h).
In In re University Medical Center, 973 F.2d 1065 (3rd Cir.1992), the Third Circuit avoided the implications of the § 405(h) bar when it found that an adversary action commenced by the debtors was not an action "arising under" the Medicare Act. In a set of circumstances similar to the instant case, University Medical Center ("UMC") filed bankruptcy after HHS reported that UMC had been overpaid by $276,042. Id. at 1070. After UMC filed for Chapter 11 protection, HHS, through its intermediary Blue Cross, withheld interim payments in a potential violation of the automatic stay. Id. UMC responded by filing an adversary proceeding complaining that by demanding payment and withholding interim payments, HHS violated the automatic stay. Id. at 1071.
The Third Circuit determined that the key question was whether UMC's claims actually "arise under" the Medicare statute, and thus fell under the prohibition of § 405(h). The court stated:
The Supreme Court has construed the "claim arising under" language of section 405(h) broadly to encompass any claims in which "both the standing and the substantive basis for the presentation" of the claims is the Medicare Act. Heckler v. Ringer, 466 U.S. 602, 615, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984) (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 2464-65, 45 L.Ed.2d 522(1975)).
* * * * * *
Due to the fact that its adversary proceeding was based on the contention that HHS violated the automatic stay provision of the bankruptcy Code, UMC maintains that its claims arose under the Bankruptcy Code, not the Medicare Act. Thus, the mandate of section 405(h) that the Medicare Act's administrative review procedures be exhausted before judicial review is sought does not apply to this case.
We agree with UMC. Its challenge to the Secretary's attempt to recover pre-petition overpayments through post-petition withholding is not inextricably intertwined with any dispute concerning the fiscal intermediaries reimbursement determinations.
University Medical Center, 973 F.2d at 1073. The University Medical Center court held that because it could determine whether HHS violated the automatic stay by withholding interim payments without determining the validity or amount of any overpayment, UMC's adversary did not "arise under" the Medicare Act. Instead, the adversary's automatic stay violation claim derived its standing and substantive basis from the Bankruptcy Code. As such, the § 405(h) prohibition did not apply.[1]
*811 With respect to the cause of action based on the violation of the automatic stay, because it "arises under" the Bankruptcy Code and not the Medicare Act, this court has jurisdiction to adjudicate the dispute.

V. Automatic Stay Violation
This court finds that the automatic stay has not been violated by HHS' recoupment efforts. The Fifth Circuit has recognized that the right to recoupment exists in bankruptcy and that the exercise of the right of recoupment does not violate the automatic stay. Matter of Holford, 896 F.2d 176 (5th Cir.1990). The key requirement for the right of recoupment to exist, however, is that the amounts sought to be recouped must come from the same transaction. Id.; In re Heffernan Memorial Hospital District, 192 B.R. 228 (Bankr.S.D.Cal.1996); University Medical Center, 973 F.2d at 1079-80. Usually, in the bankruptcy context, recoupment has been applied where the relevant claims arise out of a single contract that "provides for advance payments based on estimates of what ultimately would be owed, subject to later correction." University Medical Center, 973 F.2d at 1080. (citing In re B & L Oil Co., 782 F.2d 155, 157 (10th Cir.1986)).
The court in University Medical Center, however, held that Medicare payments made in 1985 did not arise out of the same transaction as Medicare payments made in 1988 and thus could not be the proper subject of recoupment. The court held that "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." Id. at 1081. Rejecting the arguments that the relationship between HHS and its care providers amount to one continuous transaction, the court held:
the ongoing relationship that exists between a Medicare provider and HHS is not sufficient to support the conclusion that Medicare overpayments made to UMC in 1985 arise from the same transaction, for the purposes of equitable recoupment, as Medicare payments due UMC for services provided in 1988. The 1988 payments were independently determinable and were due for services completely distinct from those reimbursed through the 1985 payments. Further, the entire account reconciliation process established by the Medicare Act and regulations works on an annual basis.
Id. By finding that recoupments in 1988 for payments in 1985 did not meet the one transaction requirement, the court held that the actions of HHS violated the automatic stay.
Other courts have disagreed with the University Medical Center decision. In Heffernan, the court held that many recoupment cases where a single contract is found to meet the "one transaction" requirement often involve a contract providing for advance payments subject to later correction based on estimates of what ultimately would be owed. Heffernan, 192 B.R. at 231. (citing B & L Oil, 782 F.2d at 157; In re Yonkers, 22 B.R. 427, 433 (Bankr.S.D.N.Y.1982); Waldschmidt v. CBS, Inc. 14 B.R. 309 (M.D.Tenn.1981); In re Midwest Service and Supply Co., 44 B.R. 262 (D.Utah 1983); Lee v. Schweiker, 739 F.2d 870 (3rd Cir.1984)). In these cases, recoupment was allowed because the "claims arose from a single contract, thereby satisfying the "same transaction" requirement for recoupment." Heffernan, 192 B.R. at 231. Regardless of the length of time between the payment and the repayment, "recoupment is justified in the single contract cases because `there is but one recovery due on a contract, and that recovery must be determined by taking into account mutual benefits and obligations of the contract.'" Id. (citing In re Holford, 896 F.2d 176, 178 (5th Cir.1990)).
The Heffernan court likened that case to the Tenth Circuit opinion in B & L Oil. In B & L Oil, a division order gave Ashland Petroleum the right to purchase unspecified amounts of crude oil produced by the Debtor. Ashland overpaid in August of 1982 for oil produced and delivered in June of 1982. The *812 Debtor filed for Chapter 11 relief in September 1982. Ashland thereafter withheld postpetition payments owed the debtor for postpetition oil production to recoup the overpayment of August 1982. As summarized by the Heffernan court:
The Tenth Circuit had no difficulty holding that the oil division order was a single contract. Further, the court found that the month-to-month purchases of oil arose out of the same transaction for purposes of applying the recoupment doctrine in bankruptcy. In fact, the court reasoned that even where the obligations are easily separable and independently determinable (i.e. month-to-month deliveries and invoices for the same), overpayments made under a single contract are much like advance royalties to a writer or musician, or Medicare overpayments to a hospital. Accordingly, the Tenth Circuit found that the recoupment doctrine properly applied.
Heffernan, 192 B.R. at 231 (citations omitted). Accord, In re Harmon, 188 B.R. 421 (9th Cir. BAP 1995). See generally, U.S. v. Consumer Health Services of America, 108 F.3d 390, 395 (D.C.Cir.1997).
This court agrees with the holdings in Heffernan and B & L Oil. The contract between AHN and HHS, despite the individual delivery of services and payment of costs, constitutes "one transaction" for purposes of recoupment. HHS, therefore, was entitled to recoup from AHN for the overpayments and did so without violating the automatic stay. As a result, the portion of the adversary relating to the automatic stay violations is dismissed.

VI. Conclusion
This court lacks jurisdiction to hear the cause of action relating to the determination of the amounts owed and due between AHN and HHS. St. Mary and St. Johns conclude that § 405(h) prohibits judicial review of controversies arising under the Medicare Act before the exhaustion of all administrative remedies. Since AHN still has administrative remedies it can exercise, this court's consideration of that matter would be premature.
Likewise, the court also dismisses AHN's claim for violation of the automatic stay. Because the Fifth Circuit has recognized that the right of recoupment is not subject to the stay provisions of § 362, HHS' attempts to recoup the administratively held funds did not violate the automatic stay.
Because this disposes of all the matters contained in the pleadings, this case is dismissed. Given the resolution of the issues above, the issues of mootness and sovereign immunity raised by HHS's response need not be addressed.

ORDER
For the reasons stated in the Memorandum Opinion, it is ordered that this adversary proceeding is dismissed.
NOTES
[1] It is instructive to consider an important factual difference between University Medical Center, and the instant case. In University Medical Center, the adversary brought by UMC solely sought a determination that HHS had violated the automatic stay and damages resulting therefrom. The parties did not dispute the reimbursement determination made by the Secretary or the fiscal intermediary. Disputing those findings in the bankruptcy court would have triggered § 405(h). "In fact, the parties stipulated both to the amounts of the overpayments made to UMC and to the separate pursuit of any substantive dispute concerning these amounts through the normal administrative processes set forth in the Medicare statute." Id. at 1073. In the instant case, not only is there not a stipulation as to the amount subject to reimbursement, but in the first cause of action AHN specifically asks this court for a declaratory judgment for the amounts due and owing to HHS. See also St. Johns, 173 B.R. at 245 (recognizing the jurisdictional implications of asking for a determination of a violation of the automatic stay versus asking for a determination as to the amount of overpayment.) By considering the causes of action separately, however, although we are required to dismiss the overpayments cause of action, we can consider on the merits the violation of the automatic stay cause of action. Once the cause of action asking for a determination as to the amount due and owing between the parties is dismissed, the cause of action seeking a damages as a result of the automatic stay remains, putting the instant case on all fours with University Medical Center.