In the Matter of Francisco Jose
DELICRUZ and Vicki Lynn
Delicruz, Debtors.

No. 01–52173–PJS.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Oct. 31, 2003.

Mark E. Bredow, Warren, MI, M. Jill Weinger, Royal Oak, MI, for Debtors.

Sheila Solomon, Royal Oak, MI, trustee.

### OPINION GRANTING DEBTORS' MOTION TO REOPEN ESTATE TO ADD OMITTED CREDITOR

PHILLIP J. SHEFFERLY, Bankruptcy Judge.

### I. Introduction

DaimlerChrysler is Mr. Delicruz's employer. Mr. Delicruz was on extended sick leave from November, 1993 to August, 2001. During this time, he received sickness and accident benefits and extended disability benefits. He also received Social Security benefits, which overlapped the extended disability benefits. The collective bargaining agreement contained a Life, Disability and Health Care Benefits Program ("Plan"). According to the Plan, the sickness and accident and extended disability benefits were to be reduced by any

benefits paid under Social Security. Mr. Delicruz was cleared by his doctor to return to work in August, 2000. However, DaimlerChrysler did not immediately reinstate Mr. Delicruz. After Mr. Delicruz filed a grievance, the parties reached a negotiated disposition, and Mr. Delicruz returned to work on August 27, 2001.

Meanwhile, Mr. and Mrs. Delicruz filed a chapter 7 petition for relief on June 21, 2001. The Debtors neither scheduled a debt to DaimlerChrysler nor listed DaimlerChrysler on the matrix. The order of discharge was entered September 20, 2001. The trustee submitted a report of no assets, and the case was closed on October 15, 2001.

After Mr. Delicruz returned to work, DaimlerChrysler began withholding funds from his paycheck to recover an alleged overpayment of disability benefits because Mr. Delicruz's Social Security benefits had overlapped his benefits under the Plan. The Debtors filed a motion to reopen their bankruptcy case to add DaimlerChrysler as an omitted creditor. The Debtors argue that the matter was "settled" as part of the disposition of the grievance for Mr. Delicruz's reinstatement. Alternatively, the Debtors contend that any overpayment has since been recovered in full by DaimlerChrysler, and if not, they seek to reopen the case to have the debt declared discharged. DaimlerChrysler objects to the motion, asserting that the overpayment was not included in the grievance settlement, the overpaid benefits have not been repaid in full, and, further, that the balance owing is not a "debt" under 11 U.S.C. § 101(12), and thus was not subject to the order of discharge under § 524(a). The parties tried to reach an agreement on the amount of the overpayment, as well as the amount withheld, but could agree on neither. The Court held an evidentiary hearing on this matter. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), and (O). For the reasons set forth below, the Court grants the motion.

## II. The Evidentiary Hearing

Oral argument on the Debtors' motion was originally set for May 2, 2003. The parties reported that they anticipated resolving the matter, and asked for a two-month adjournment, which the Court granted. The Debtors also requested additional time to file a reply to a recently filed brief by DaimlerChrysler that argued the overpayment was not a "debt" under the Bankruptcy Code. In addition, the Debtors noted that DaimlerChrysler continued to take deductions from Mr. Delicruz's paycheck. The Debtors asked for a stipulation that the deductions would stop, pending the Court's decision on the motion to reopen. DaimlerChrysler agreed to suspend the ongoing deductions, although that was never set forth in an order of the Court.

The adjourned hearing was held July 9, 2003. At that time, the Debtors reported on the record that the parties had made significant progress in resolving the matter. Both parties expected that the matter would be settled, and thus did not anticipate the need for an evidentiary hearing. The Debtors noted that DaimlerChrysler continued to withhold funds from Mr. Delicruz's paycheck and, if the matter was not resolved, reserved the right to bring a contempt motion. DaimlerChrysler's counsel was unaware of the continued withholding, which he explained was an oversight, and not deliberate. He assured the Court and the Debtors that it would cease forthwith. The Court set a second adjourned date for August 6, 2003, in the event the matter did not settle.

On August 6, the parties initially reported that they were still in negotiations.

After a short recess, they stated that they had reached an impasse and the hearing needed to go forward. Three witnesses testified at the evidentiary hearing: Mr. and Mrs. Delicruz, and Ms. Eulene Burnside, an employee of Esis, which is the Plan administrator.

Although she did not work for Esis or its predecessor during the time that Mr. Delicruz was disabled and thus did not deal with the Debtors directly, Ms. Burnside gave helpful background information about how disability benefits are awarded, and how Social Security benefits are offset against those benefits under the Plan. According to her testimony, sickness and accident benefits are short term benefits, which are awarded in the first year of a disability. On the other hand, an employee is eligible to receive extended disability benefits only after one year of being disabled. Employees are directed to apply for Social Security benefits while they are receiving sickness and accident benefits. Social Security benefits are not awarded until the fifth month of disability. Employees may appeal an initial denial of Social Security benefits and, if successful, are entitled to a retroactive award.

According to Ms. Burnside, the letter of award from the Social Security Administration is critical to determining the amount of benefits an employee and their dependents are entitled to receive, including the amount of any retroactive award. The letter contains the most accurate and comprehensive information. However, she explained that Esis never received a copy of Mr. Delicruz's award letter despite having requested it. Therefore, Esis could not verify the exact amount of benefits that Mr. Delicruz was entitled to receive from Social Security.

Portions of the Plan were introduced into evidence as Exhibit 1. The Plan details the process for employees to apply for Social Security benefits, including challenging an initial disallowance. (Creditor's Ex. 1 at 234.) In the event an award is made, Ms. Burnside testified that Esis relies on the following general provision to obtain repayment of any duplicate payments that were made under the Plan:

> Upon receipt of a notice of award of [Social Security disability insurance benefits], any overpayment of Sickness and Accident (or Extended Disability) benefits that results from a retroactive award of [Social Security disability insurance benefits] shall be repaid. The amount of the overpayment will be based on the actual amount of such award for the coinciding period of Sickness and Accident (or Extended Disability) benefit payments.

(*Id.* at 235.)

If any overpayment is not repaid, the Plan permits DaimlerChrysler to recover the overpayment by offsetting disability benefits. Ms. Burnside explained that the following paragraph authorizes the offsetting of short term disability benefits:

> Reduction of Benefit. Weekly benefits will be reduced by . . . the weekly equivalent of any Disability Insurance benefits . . . to which the employee is entitled for the same period under the Federal Social Security Act or any future legislation providing similar benefits, . . . and for purposes of such reduction, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit rate by 4.33.

(*Id.* at 88–89.) For authority to recover the overpayment against long term benefits, Ms. Burnside pointed to the following provision:

> The Insurance Company may require each applicant or recipient of extended disability benefits to certify or furnish

verification of the amount of his income from sources listed in B. above, and the amount of any extended disability benefit payments in excess of the amount that should have been paid, after reduction for such other benefits, may be deducted from future extended disability benefits.

(*Id.* at 94.)

Ms. Burnside also stated that these same provisions were outlined in a letter dated September 27, 1999 from DaimlerChrysler to the Union. (Creditor's Ex. 2.) In addition, the letter states that employees must submit "a signed authorization for release of [Social Security disability insurance benefit] information to" Esis, and "copies of all Social Security determinations and decisions regarding the [Social Security disability insurance benefit] claim." (*Id.* at 1.) The letter warns employees

that failure to submit the required documents or any subsequent authorization request will result in the deduction from any [sickness and accident] (or [extended disability benefits]) of an amount equal to the assumed [Social Security disability insurance benefit].

(*Id.*)

Near the end of the hearing, the Court questioned Ms. Burnside generally about DaimlerChrysler's ability to use payroll deductions from wages as a mechanism to recover an overpayment. On re-direct examination, Ms. Burnside stated that the right to implement a payroll deduction was separate from the provisions allowing offset against future disability benefits. However, she could not remember exactly what provision of the Plan authorizes the payroll deduction. Counsel for DaimlerChrysler handed her a copy of the entire Plan, and Ms. Burnside then identified a provision on page 140 of the Plan as authorizing payroll deductions. Counsel for the

Debtors then noted that page 140 permits DaimlerChrysler to make "appropriate deductions," and asked Ms. Burnside whether she had received any guidance as to what an "appropriate" amount would be. Ms. Burnside responded that Esis' standard was to deduct the entire amount of disability benefits, but only 25% of wages. She stated that the 25% limit on deductions against wages was in the Plan, but could not point out specifically where.

Applying the Plan provisions to Mr. Delicruz's case, Ms. Burnside testified that DaimlerChrysler became aware in 1995 that Mr. Delicruz had been awarded Social Security disability benefits. Mr. Delicruz had very little recollection of the Social Security benefits awarded or the application process. He testified that his disability was such that he was heavily medicated and essentially incapacitated. His wife was appointed as his conservator. When asked whether he knew if there was an award letter, he stated that he did not and that his wife "took care of everything." The checks were not issued to him directly, but instead went to his "payee." Mr. Delicruz did not know the amount of benefits he received. Mrs. Delicruz testified that her husband received a lump sum payment of $16,385 from Social Security and that another $10,000 was paid to her husband's minor children. Mrs. Delicruz also testified that her husband received a subsequent monthly amount of $1,088, but her testimony was unclear as to how many such payments he received.

Having been notified that Mr. Delicruz had received Social Security benefits, Esis proceeded to determine the amount of the award and any resulting overpayment. Ms. Burnside testified that Esis still did not have a copy of the award letter. Her file indicated that two letters were sent to Mr. Delicruz in 1995 asking for a copy of the award letter. The file contained one

letter in response from Mr. Delicruz, stating that he had "gone to court" and was awaiting a decision. As an alternative method of ascertaining the amount of a Social Security award, where the employee fails to provide the award letter, Ms. Burnside explained that Esis uses a form Authorization to Secure Award or Denial Information, which authorizes the Social Security Administration to release information concerning Social Security benefits awarded. According to Ms. Burnside, Esis cannot contact the Social Security Administration for information without the employee's approval, and any request must be in writing. This form is first sent to the employee for their signature, and then forwarded to the Social Security Administration for completion of any award information. Exhibit 3 is the authorization form used for Mr. Delicruz.

During his testimony, Mr. Delicruz identified the undated signature in the middle of Exhibit 3 as his, but did not remember signing the form. The form "authorize[d] the Social Security Administration to either send a copy of the award or denial notice or furnish the information requested in Item 2 below . . . ." (Creditor's Ex. 3.) The form contains an "Item 1" and an "Item 2." The former states that the employee "[h]as authorized us to send you a copy of his or her award or denial notice which is enclosed." (*Id.*) The latter states that the employee "[h]as authorized us to furnish you the following information regarding his or her claim." (*Id.*) There is a box before both items, but neither is checked on Mr. Delicruz's form. However, there is detailed information about the award to Mr. Delicruz set forth on the form below Item 2.

The form contains a box to check if the type of claim is for disability benefits and a box to check if the type of claim is for retirement benefits. Here, the box for disability was checked and it then shows that Mr. Delicruz filed his claim in November, 1992, and became eligible to receive benefits in May, 1993. It further indicates that he received his first payment that month in the amount of $1,075, and the current monthly benefit was $1,134.10. The "Remarks" section of the form reads "5/93—1075.00    12/93—1103.00    12/94—1134.00 4/95—1134.10." Ms. Burnside explained that the amounts and dates did not necessarily reflect what Mr. Delicruz *actually* received during those months, but instead showed what he was *entitled* to receive during the months indicated. Item 2 bears a signature, presumably from the Social Security Administration, dated October 18, 1995. The form also has two "received" date stamps. Ms. Burnside testified that the January 5, 1994 "received" date on the bottom of the form indicated the date DaimlerChrysler received the form from Mr. Delicruz. The second stamp, in the middle of the form, has the date October 20, 1995, which she said is the date DaimlerChrysler received the completed form from the Social Security Administration.

Using this information, Ms. Burnside explained how Esis calculated Mr. Delicruz's Social Security benefit and, ultimately, the overpayment amount. Mr. Delicruz received sickness and accident (short term) benefits through December 2, 1993, and long term disability benefits after that. Adding the monthly amounts in the Item 2 "Remarks" section, the total is $32,101. This calculation is detailed on page 2 of Creditor's Exhibit 4. However, the permitted offset is not dollar-for-dollar. According to Ms. Burnside, Esis does not include an annual cost of living increase for long term disability. Therefore, the monthly benefit rate used by Esis was set at $1,103 from December, 1993 forward. In addition, the Plan requires that the monthly benefit be recalculated as a weekly

amount, using a multiplier. With those adjustments, Esis determined that Mr. Delicruz was entitled to receive $7,596.16 in short term disability benefits, and $24,194.84 in long term benefits, for a total of $31,791. Ms. Burnside again emphasized that Esis used Exhibit 3 to compute the amounts that Mr. Delicruz was entitled to receive from Social Security, not what he actually received. She also acknowledged that a certain amount of speculation was involved because Esis never received a copy of the award letter from Mr. Delicruz.

The Debtors admit that Mr. Delicruz received an award from Social Security. However, they do not agree with Ms. Burnside's calculation of the amount received. There were two areas where the Debtors argued that Esis should have adjusted its calculation of Mr. Delicruz's Social Security award. The first relates to Medicare insurance payments. Mrs. Delicruz testified that Medicare insurance premiums were deducted from the Social Security benefits Mr. Delicruz received. However, Esis did not adjust its figure downward because Ms. Burnside said Esis needed more information in order to take those premium payments into account, and that the information would have been contained in the award letter that the Debtors failed to provide. Even if that information had been provided, she testified that the Medicare insurance premiums would not necessarily result in a reduction in the overpayment amount, but instead would have been reimbursed "off to the side."

The second area of contention regarding the Social Security award amount was whether some portion of it should not be treated as an overpayment because it was actually not made to Mr. Delicruz but instead was a separate award made by the Social Security Administration to Mr. Delicruz's four minor children: April, Summer, September, and Amber Gawronski. Mrs. Delicruz testified that the children live with their mother, and that they received $10,000 from Social Security, with the checks having been sent directly to their home. In support of this contention, the Debtors introduced into evidence Exhibits A through E, which are computer printouts entitled "RSDI PAYMENT HISTORY," one each for Mr. Delicruz and his four children. Although the Debtors relied on these exhibits to prove payments were made to the children, no witness was able to interpret the forms or to explain the details of the information on them.

On the other hand, Ms. Burnside testified that the award letter itself would have indicated any adjustments for the children. She said the Social Security Administration will typically send a separate award letter stating that a dependent is eligible for a certain dollar amount per month. If an award to a dependent is clearly separate from the benefits awarded to an employee, Esis does not offset those amounts. Absent any evidence to show that payments to a dependent are because of the entitlement of the dependent, and not for the employee, Esis would treat any payment made to a dependent as part of the overpayment to the employee and would still offset to recover it. In this case, Esis did not receive any award letter, for either Mr. Delicruz or his children. Ms. Burnside concluded that there was nothing on which Esis could base a determination that any benefits paid to the children were separate from benefits paid to Mr. Delicruz, and thus should not be offset. Therefore, Esis had no information other than the detail set forth under Item 2 of Exhibit 3. Although that authorization form has a section labeled "Dependent Award(s)", in this case, this section was left blank.

Although Mr. Delicruz was awarded Social Security disability benefits through September, 1995, he was not cleared to return to work until August, 2000. DaimlerChrysler refused to allow him to return to work at that time. Mr. Delicruz testified that, after thirty days, he filed a grievance for failure to reinstate. He explained that it is a four-step process, and the grievance went to the appeal board. During this time, the overpayment was an active issue. Exhibit F is a letter dated October 10, 2000, from Ms. Burnside's file. The letter is from Mr. Delicruz, and states: "I Francisco Delicruz, ... [d]o not agree with decision regarding $15,056.20 overpayment. Please send me hard copy documents to review this claim." (Debtors' Ex. F.) No explanation was provided by the Debtors of the figure used in this letter. According to Mr. Delicruz, another issue in the grievance was the amount of back pay due upon his reinstatement. He testified that he agreed to a lesser amount of back pay in exchange for a disposition that included a settlement of the overpayment issue. In his words, he "wanted to be made whole." It made no sense to him to receive back pay, only to have it taken away a few months later in satisfaction of the overpayment. Thus, he testified that he agreed to reinstatement with no back pay or benefits.

Both Mr. and Mrs. Delicruz took part in the negotiations that led to the disposition of the grievance. Mrs. Delicruz testified that they had almost daily discussions with their union representative. She stated that they wrote letters, but did not have copies in Court. She believed that the overpayment was an issue in the grievance process. Mr. Delicruz testified that the grievance was pending before the appeal board when the matter was settled and the disposition entered. Mrs. Delicruz stated that there were multiple dispositions of the grievance, although only one was offered and admitted into evidence, which was Exhibit 5. That Exhibit, entitled "Disposition," is dated August 22, 2001, and states:

> In full and final settlement of this case the Corporation agrees to reinstate Mr. Delicruz from sick leave in accordance with his seniority without back pay or benefits for the time he was away from the plant, provided he can meet normal requirements. Upon his return to work, his employment status will be amended to a layoff for the period of time from January 18, 2001 to the reinstatement date of August 27, 2001.

(Creditor's Ex. 5.) The Disposition also addressed payment of "SUB benefits," indicating that Mr. Delicruz would be paid an "equivalent" amount "[i]n the event it is determined that SUB benefits are not payable ...." (*Id.*) Mr. Delicruz explained that SUB benefits are partial pay during a lay off.

When questioned about Exhibit 5, Mr. Delicruz stated that his understanding of the "case" was that it encompassed not only his reinstatement, but also back pay, benefits, pension, and the overpayment. Mrs. Delicruz echoed her husband's understanding that the Disposition somehow included the overpayment issue, although each of them acknowledged that the Disposition said nothing on its face about the overpayment. At the time the Disposition was rendered, the chapter 7 petition had already been filed. Mr. Delicruz stated that they were in the process of filing for bankruptcy when the negotiations were completed. Mrs. Delicruz testified that, at the time they filed their petition, she thought the matter was resolved. Ms. Burnside could offer no information about the settlement of the grievance because Esis was not involved in that process.

Mr. Delicruz testified that, some months after he was reinstated, DaimlerChrysler

began taking deductions from his paycheck. In addition, he later took separate sick leaves for two operations and pneumonia. During that time, DaimlerChrysler withheld his entire sickness benefit checks. DaimlerChrysler calculated that it had recovered a total of $23,608.25 as of July 30, 2003. Exhibit 4 contains a summary and detailed accounting of the amounts and dates of those deductions, but it does not show how much was deducted from Mr. Delicruz's paychecks and how much was offset against sick pay or disability benefits. The calculations in Exhibit 4 were confirmed by the testimony of Ms. Burnside. Although the Debtors alleged in their post-hearing brief that Daimler-Chrysler recommenced the deductions from Mr. Delicruz's paycheck post-hearing, despite an agreement on the record to suspend deductions pending this Court's decision, (Debtors' Closing Arguments at 7, n. 1.), the Debtors introduced no evidence to refute DaimlerChrysler's evidence that it has recovered a total of $23,608.25 as of July 30, 2003.

Using the recovery figure of $23,608.25 and the adjusted Social Security assumed award of $31,791, Ms. Burnside calculated that Mr. Delicruz was still overpaid by $8,182.75. (Creditor's Ex. 4 at 1.) On the other hand, the Debtors argue that Mr. Delicruz received only $16,385 in Social Security benefits and any amounts paid to his children were not received by him. Thus, according to the Debtors, even without deducting Medicare insurance premiums or adding any amounts withheld since July 30, 2003, the $23,608.25 that Daimler-

Chrysler acknowledges it has withheld more than compensates it for the overpayment.

The parties submitted written briefs in lieu of closing argument. The Debtors presented three alternative arguments: (1) the overpayment issue was resolved in the Disposition, which settled the failure to reinstate grievance; (2) any overpayment was paid in full, and indeed DaimlerChrysler has received more than full recovery; and (3) any amount of the overpayment still owing is a debt that was discharged by the bankruptcy. Therefore, the Debtors conclude that reopening the bankruptcy case would afford them relief by having an order entered declaring the debt to be discharged.

DaimlerChrysler counters that: (1) the grievance Disposition was clear on its face and did not resolve the overpayment issue; (2) based on the amount of benefits awarded by Social Security and the right to offset under the Plan, DaimlerChrysler has still not recovered the full amount of the overpayment; and (3) the amount of the overpayment still owing is not a "debt" under the Bankruptcy Code and thus not subject to the discharge.[1] DaimlerChrysler thus reasoned that it would be pointless to reopen the case. In addition, Daimler-Chrysler raised a jurisdictional issue in that its right to recover any overpayment, or Mr. Delicruz's right to recover any over-reimbursement, should be adjudicated through the administrative procedures and remedies available under the Plan. Because Mr. Delicruz has not exhausted these procedures, DaimlerChrysler con-

1. The Debtors conceded that, *if* the return of the overpayment is not a "debt" under the Code, it was not subject to the discharge injunction. However, DaimlerChrysler misinterpreted this concession and repeatedly stated both at the evidentiary hearing and in its post-hearing brief, that the Debtors somehow admitted that the return of the overpayment was in fact not a "debt" and thus not subject to the discharge. The Court has carefully reviewed the written submissions, the testimony, and oral argument. There was no such admission by the Debtors or by their counsel. In fact, the Debtors continued to argue in the alternative that the return of the overpayment was a debt that was discharged.

tends that this Court has no jurisdiction over this matter.

### III. Discussion

#### A. The Jurisdictional Argument

■ DaimlerChrysler bases its jurisdictional argument on the assumption that the Debtors have agreed that any amount still owing is not a debt subject to the bankruptcy discharge. However, the Debtors never conceded this point. Therefore, the questions of whether any amount still owing is a debt and, if so, whether it was subject to the order of discharge, remain open issues. These are core matters under 28 U.S.C. § 157(b)(2)(A), (I) and (O).

Nevertheless, DaimlerChrysler argues that this "Court should decline to exercise jurisdiction." Although DaimlerChrysler acknowledges that ERISA does not require that the Debtors exhaust their administrative remedies, DaimlerChrysler urges this Court to require them to do so. DaimlerChrysler did not cite any statutory authority for its request that this Court decline to entertain the Debtors' motion. The questions of the amount of benefits Mr. Delicruz received, the amount that the Plan authorized to be offset, and whether or not adjustments for insurance premiums and payments to dependents should be subtracted, could be decided through administrative means. However, whether the overpayment constitutes a debt and whether it is subject to the discharge are core matters, and DaimlerChrysler has not explained the jurisdictional basis for these matters to be decided through the administrative process. Thus DaimlerChrysler's proposal would leave the Debtors without a forum to decide these core issues. Therefore, the Court rejects DaimlerChrysler's suggestion that it decline to exercise its jurisdiction.

#### B. Determining "Cause" for Reopening the Case

■ Section 350(b) of the Bankruptcy Code provides for the reopening of a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "The burden of establishing cause is on the movant." Barry Russell, *Bankruptcy Evidence Manual* § 301.45 (West 2003) (citations omitted). The Debtors ask that the case be reopened so that they may amend Schedule F to add DaimlerChrysler as a general unsecured creditor. DaimlerChrysler did not allege, nor is there anything in the record to suggest, that the omission of DaimlerChrysler from the original schedules was anything other than the result of the Debtors' belief that the matter was resolved through the Disposition of the failure to reinstate grievance. The Court notes that adding an omitted creditor in a no asset case where dischargeability is not challenged "is for all practical purposes a useless gesture." *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 468, 471 n. 4 (6th Cir.1998) (internal quotation marks and citation omitted). Such is not the case if dischargeability is at issue. *See generally In re Walker*, 195 B.R. 187, 199–203 (Bankr.D.N.H.1996) (outlining three methods of litigating dischargeability after a case is closed, and concluding that "clear[ing] the waters" as to dischargeability, relieving the parties from litigating this "rather arcane area of law" in state forums, allowing debtors to file accurate and complete schedules as required by law, and ensuring that a creditor will receive future notice if assets are later administered, all constitute "cause" for reopening a case). The issue of dischargeability is central to this case. The parties disagree whether the amount of the overpayment, assuming that there is a balance due, is a debt and, if so, whether or not it is discharged. Therefore, reopen-

ing the case will afford relief to the Debtors.

## C. Whether the Grievance Disposition Encompassed the Overpayment

Both the Debtors testified credibly that they believed the grievance settlement reflected in the Disposition (Creditor's Ex. 5) included any overpayment issue. Mr. Delicruz contended that he gave up a claim for back pay in exchange for settling the benefits overpayment matter, and it would have made no sense to receive back pay only to have the overpaid benefits then deducted from his paycheck. That would have entailed receiving money from DaimlerChrysler only to pay it back. This is supported by his reinstatement being "without back pay or benefits". (Creditor's Ex. 5.) However, Mr. Delicruz's reasoning assumes that he was likely to have received back pay upon reinstatement. There is nothing in the record to enable the Court to make such a finding. It may have been that, under the circumstances, he was not entitled to receive back pay and thus the matter was not even a negotiating point. Mrs. Delicruz testified that the Debtors had written several letters, and there were multiple grievance dispositions. However, the Debtors produced none of those letters or any written disposition that supports this testimony. Mrs. Delicruz also stated that they had almost daily discussions with Mr. Delicruz's union representative, yet there was no testimony from a corroborating witness. The Court may draw an adverse inference from the Debtors' failure to produce supporting documentary or testimonial evidence. *See Beil v. Lakewood Engineering and Manufacturing Co.,* 15 F.3d 546, 552–53 (6th Cir.1994); *Gafford v. Trans–Texas Airways,* 299 F.2d 60, 63 (6th Cir.1962).

The only documentary evidence adduced by the Debtors on this issue is Exhibit 5, which makes no mention of the benefit overpayment being a part of the Disposition. It simply refers to "this case." In examining Exhibit 5, it includes a case number, and is captioned "Failure to Reinstate Delicruz, Francisco." It purports to be a "full and final settlement of this case . . . ." It expressly addresses back pay and benefits, Mr. Delicruz's seniority, his status being amended to layoff, and the amount of SUB benefits he was to receive. According to the Debtors' testimony, these were matters that were a part of the negotiation process. If a claim for overpayment of benefits was part of *"this case,"* then one would expect to see it recited on the face of the Disposition. It is not. There is no reason to question the sincerity of the Debtors' *belief* that the reinstatement case included the overpayment issue. However, there is simply no evidence to show that it *in fact* was included in the settlement, given the stated issues that were explicitly addressed in the Disposition. Therefore, the Court concludes that the Debtors have not met their burden of proving that the Disposition included the overpayment issue.

## D. Whether the Overpayment is a "Debt": Recoupment vs. Setoff

A discharge under 11 U.S.C. § 727 "operates as an injunction against the commencement or continuation of an action, . . . or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ." 11 U.S.C. § 524(a)(1). The term "debt" is defined under the Bankruptcy Code as "liability on a claim." § 101(12). "Claim" in turn is defined as a "right to payment . . . ." § 101(5)(A). All parties concede that Mr. Delicruz received an overpayment of benefits. The basis for DaimlerChrysler's argument that the overpayment does not constitute a debt is the premise that its deductions are a recoupment of the overpayment of benefits. Re-

coupment should be distinguished from setoff. The latter "reduc[es] or extinguish[es] a mutual debt arising from different transactions", and is subject to the automatic stay. *Aetna Life Insurance Co. v. Bram (In re Bram)*, 179 B.R. 824, 826 (Bankr.E.D.Tex.1995) (citation omitted). On the other hand, recoupment "reduc[es] or extinguish[es] a debt arising from the same transaction", and is not stayed by the bankruptcy. *Id.* (citation omitted); *see also Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984) (describing recoupment as "essentially a defense to the debtor's claim against the creditor rather than a mutual obligation").

> [Recoupment] is applied when there are countervailing claims arising from the same transaction strictly for the purpose of abatement or reduction ... [and] provides for the adjudication of the just apportionment of liability relative to a dispute regarding a singular transaction.
>
> Because recoupment only reduces a debt as opposed to constituting an independent basis for a debt, it is not a claim in bankruptcy, and is therefore unaffected by the debtor's discharge.

*Oregon v. Harmon (In re Harmon)*, 188 B.R. 421, 425 (9th Cir. BAP 1995) (internal quotation marks and citation omitted). "The principle of recoupment presents an affirmative defense ... The burden of proof on matters raised in the use of recoupment is on the [party] who raises them." Russell, *Bankruptcy Evidence Manual* § 301.73 (citation omitted). Therefore, DaimlerChrysler has the burden of proving the applicability of the doctrine of recoupment by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) ("presum[ing] that [preponderance of the evidence] standard is applicable in civil actions between private litigants unless particularly important individual in-

terests or rights are at stake" and applying the standard to a non-dischargeability action) (internal quotation marks and citations omitted).

■ Several courts have found that recovering an overpayment of disability benefits from future benefits falls within the scope of recoupment. For example, in *Aetna Life Insurance Co. v. Bram (In re Bram)*, 179 B.R. 824 (Bankr.E.D.Tex. 1995), the debtor was covered by the employer's long term disability plan, which was administered by the plaintiff. 179 B.R. at 825. The debtor became totally and permanently disabled, and thus eligible to receive disability benefits. However, the plan provided that, if the beneficiary received social security benefits, the plan benefits would be reduced proportionately. The plan also provided that, in the event of an overpayment due to a retroactive award of social security, the plaintiff was entitled to temporarily suspend payments until the overpayment was recovered. The debtor had executed an agreement in which he agreed to reimburse the plaintiff in the event of an overpayment. *Id.* Upon discovering that the debtor had in fact been receiving social security benefits, the plaintiff demanded reimbursement, and suspended payment of benefits. *Id.* at 825–26. The debtor then filed a chapter 7 petition. The plaintiff argued that the overpayment was not a "debt." *Id.* at 826.

After noting the distinction between setoff and recoupment, the *Bram* court found that "[t]he key issue is whether or not the prepetition overpayments and the postpetition [long term disability plan] benefit payments arise from the same transaction." *Id.* at 826. Because both the pre-petition overpayments and the post-petition disability payments from which the plaintiff sought to recover the overpayments arose from the disability benefit plan, the court

concluded that recoupment applied. *Id.* at 826–27. The court found the recovery of overpaid benefits was in the nature of recoupment, and concluded, because "the right to recoupment gives no right to actual payment, it is not a claim. If it is neither a claim nor a debt, then it is also not dischargeable under the Code." *Id.* at 827; *see also Brown v. General Motors Corp.,* 152 B.R. 935 (W.D.Wis.1993) (finding duplicate social security benefits under similar plan provisions to give the employer a right to recoupment but not a right to payment); *Oregon v. Harmon (In re Harmon),* 188 B.R. 421, 425–26 (9th Cir. BAP 1995) (finding awards of temporary and permanent disability benefits to be related to the same injury and thus arose out of the same transaction). *Compare Baker v. United States,* 100 B.R. 80, 82–83 (M.D.Fla.1989) (finding an obligation to repay federal disability benefits was a debt because the government had a right to direct collection as well as the right to offset against future benefits); *Thompson v. Board of Trustees of the Fairfax County Police Officers' Retirement System (In re Thompson),* 182 B.R. 140, 145, 149 (Bankr. E.D.Va.1995) (finding disability benefits could not be recouped against retirement benefits even though both were provided for under a single employee contract because they arose from separate transactions).

The Debtors agreed at the hearing with the general proposition that any overpayment could be recovered against future disability benefits, but contended that DaimlerChrysler had failed to prove it had a valid right of recoupment. The Plan provides that short term "[w]eekly benefits will be reduced by … the weekly equivalent of any" Social Security benefits.

(Creditor's Ex. 1 at 88–89.) In addition, "any extended disability benefit payments in excess of the amount that should have been paid … may be deducted from future extended disability benefits." (*Id.* at 94.) Therefore, the Court concludes that DaimlerChrysler's ability to recover overpaid disability benefits from future disability benefits is a right of recoupment. Because a right to recoupment does not give rise to a right to payment, there is no liability on a claim and thus no "debt" as defined by the Bankruptcy Code. Therefore, the right of recoupment is not subject to the discharge. This leaves the issue of DaimlerChrysler's right to recover the overpayment against Mr. Delicruz's wages.

According to the testimony of Ms. Burnside, the Plan also allows DaimlerChrysler to recover an overpayment through payroll deductions, including withholding up to 25% of wages. Ms. Burnside testified that page 140 of the Plan provided this authority. She was asked on cross examination to clarify that provision, but only as to the calculation of the permissible amount of deductions, not DaimlerChrysler's authority to make such deductions. As noted, DaimlerChrysler has the burden of proving its affirmative defense by a preponderance of the evidence. Ms. Burnside was a credible witness. The Debtors have offered nothing to counter her testimony. Therefore, the Court concludes that DaimlerChrysler did have the authority under the Plan to recover the overpayment against Mr. Delicruz's wages.[2]

However, even though the Court has found that the Plan authorizes DaimlerChrysler to recover overpaid disability benefits from wages, the Court concludes that this is not a true right of recoupment. As noted, recoupment is a defense to a

---

2. The Debtors also argued that DaimlerChrysler's withholding of 25% of Mr. Delicruz's paycheck violated Michigan labor laws. However, the Debtors failed to cite a statute or any authority for this assertion. Therefore, the Court will not address this argument.

claim, and acts to reduce a debt arising from the same transaction. *Lee v. Schweiker*, 739 F.2d at 875. Applied to this case, if Mr. Delicruz has a claim for future benefits, DaimlerChrysler may defend against that claim by reducing those benefits on account of a previous overpayment of benefits. Under DaimlerChrysler's reading, in addition to recouping against the payment of future disability benefits, if Mr. Delicruz also has a claim for wages for hours worked, DaimlerChrysler can defend against that claim by reducing those wages in order to recoup the overpaid disability benefits. This is not recoupment. Disability benefits are not the same as wages. They do not arise out of the same transaction. The former are awarded upon a determination that a disability has left someone unable to work, and the latter are earned for hours worked. They are not "countervailing claims arising from the same transaction strictly for the purpose of abatement or reduction . . . ." *In re Harmon*, 188 B.R. at 425 (internal quotation marks and citation omitted). Nor is DaimlerChrysler's offsetting against wages an "adjudication of the just apportionment of liability relative to a dispute regarding a singular transaction." *Id.* Instead, the recovery of disability benefits against wages creates "an independent basis for a debt," *id.*, and a "right to actual payment," *In re Bram*, 179 B.R. at 827.

The Court's conclusion is supported by cases that address recoupment in the context of retirement benefits. In *Mullen v. United States*, 696 F.2d 470 (6th Cir.1983), the debtor was released from service in the Air Force when forces were reduced. *Id.* at 471. He received a $15,000 "readjustment allowance" at that time, and was informed that if he returned to service, upon later retirement, "he would not be receiving any retirement pay unless and until he repaid 75% of this readjustment allowance." *Id.* (internal quotation marks and citation omitted). The debtor did re-enlist, and soon after retiring, he filed for bankruptcy without having repaid the readjustment allowance. The Air Force continued to withhold his retirement benefits. The debtor sought to hold the Air Force in contempt for a violation of the stay. *Id.* The Air Force argued that it only had a right of recoupment and no right to payment. *Id.* at 472.

In analyzing whether this situation gave rise to a right to payment, the *Mullen* court looked to a discussion of the definitions of "debt" and "claim" in the legislative history, which used the situation of a loan against an insurance policy as an example of what would not qualify as a debt:

Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for set-off against any benefits that become payable under the policy. As such, the loan will not be a claim (it is not a right to payment) that the company can assert against the estate; nor will the debtor's obligation be a debt (a liability on a claim) that will be discharged . . . .

*Id.* at 472 (internal quotation marks and citation omitted). The *Mullen* court found that the

readjustment allowance appears to be nothing more than a type of prepaid retirement benefit. Like the terms of a loan on an insurance policy, the [Air Force] has a right to setoff benefits that have already been paid against benefits that become payable. No interest accrued on the amount owed nor did the [Air Force] have the right to recoup the readjustment allowance from any other source.

*Id.* Therefore the court concluded that the "transaction gave rise to no creditor-debt-

or relationship between the [Air Force] and [the debtor]." *Id.* The *Mullen* court cited with approval *New York City Employees' Retirement System v. Villarie (In re Villarie),* 648 F.2d 810 (2d Cir.1981), in finding "[t]his is the precise transaction contemplated by the legislative history of subsection 101(11)." *Mullen* 696 F.2d at 472.

In *Villarie,* the debtor participated in the New York City Employees' Retirement System ("NYCERS"). 648 F.2d at 811. Contributions to retirement accounts were made through payroll deduction from weekly paychecks. NYCERS allowed members to borrow against their accounts, which were, "[i]n effect, ... an advance against the member's future retirement benefits." *Id.* Members were required "to repay the loan, with interest, through payroll deductions in excess of the member's ordinary contribution." *Id.* Upon retirement or separation of service, any outstanding loan balance was repaid through a reduction in retirement benefits. The debtor had an outstanding loan when he filed for bankruptcy. NYCERS initiated an adversary proceeding, asking that the advance be declared not a "debt" and that the retirement system be allowed to continue weekly payroll deductions. The bankruptcy court's finding that the advance was a debt and subject to the discharge was reversed on appeal. *Id.* at 811–12. The Second Circuit found that NYCERS' only recourse was to "offset the amount borrowed against his future benefits", and did "not give NYCERS the right to sue a member for the amount of the advance." *Id.* at 812; *see also In re Esquivel,* 239 B.R. 146–47, 151 (Bankr. E.D.Mich.1999) (J. Spector) (addressing whether a loan against an ERISA-qualified pension plan created a claim and concluding because the pension plan "could not sue the debtor for the unpaid loan because its remedy is to deduct the unpaid portion

of the amount advanced from any benefits the debtor was to receive in the future", that there was no right to repayment); *In re Thompson,* 182 B.R. at 145, 149 (finding disability benefits could not be recouped against retirement benefits even though both were provided for under a single employee contract because they arose from separate transactions).

The lack of a right to recover "from any other source" was significant in the *Mullen* decision in determining whether the doctrine of recoupment applied. 696 F.2d at 472. If a right to recover from a single source supports a finding of recoupment, then it stands to reason that a right to recover from multiple sources means the transaction is outside the scope of recoupment. In the case before this Court, DaimlerChrysler claims the right to recover the overpaid disability benefits not only against future disability benefits, but against wages as well. These are different sources. Under the reasoning in *Mullen,* this means that the doctrine of recoupment does not apply. To paraphrase, only apples can be recouped against apples, not apples against oranges. Apples may be *set off* against oranges, but this takes the matter out of the nature of recoupment by affording a right to payment instead of simply a right to reduce a debt. Disability benefits are not prepaid wages, *Mullen,* 696 F.2d at 472, nor are they an advance against wages, *Villarie,* 648 F.2d at 811. *See also Baker v. United States,* 100 B.R. 80, 81–82 (M.D.Fla.1989) (finding that, because the Department of Labor had a choice between recoupment or direct collection, there was a right to payment through the alternate remedy of direct collection, which created a claim, and the liability on the claim was a debt).

Therefore, the Court concludes that the Plan gives DaimlerChrysler both a right to setoff and a right to recoupment, the for-

mer against wages and the latter against future disability benefits. The right to setoff was subject to the automatic stay under § 362(a)(7) and is covered by the discharge injunction under § 524(a). The right to setoff against wages also means that DaimlerChrysler's post-petition garnishment of Mr. Delicruz's wages was a violation of the stay and the discharge injunction, regardless of DaimlerChrysler's knowledge or notice of the case, or lack thereof. *See* 3 *Collier on Bankruptcy* ¶ 362.11 (15th ed. rev.2003) ("Because the stay is imposed automatically, and often without notice to parties who may be stayed, a party may violate the stay without realizing that it has taken effect."). Any amounts deducted from those wages post-petition must be refunded to Mr. Delicruz. The right to setoff against wages also means that DaimlerChrysler had a claim against the bankruptcy estate. However, this is a no asset case and DaimlerChrysler did not allege any basis for non-dischargeability under § 523. Therefore, that claim was discharged. *In re Madaj*, 149 F.3d at 472. On the other hand, DaimlerChrysler's right of recoupment against future benefits does not give rise to a right to payment, so there is no liability on a claim and no debt that is subject to the discharge injunction.

## E. The Amount Subject to Recoupment

Having reached a conclusion as to the core matters, the Court must decide the amount of the overpayment, which in turn requires determining the amount of the award of Social Security benefits. Mr. Delicruz was required to complete the Authorization to Secure Award or Denial Information form, which authorized the Social Security Administration to release information on the award to Esis. (Creditor's Ex. 2 at 1.) In addition, he was required to provide "copies of all Social Security determinations and decisions regarding the [Social Security disability insurance benefit] claim." (*Id.*) Although Mr. Delicruz completed the release form, he did not provide a copy of the award letter. The consequence of his failure to provide documentation is "the deduction from any [sickness and accident] (or [extended disability benefits]) of an amount equal to the assumed [Social Security disability insurance benefit]." (*Id.*) Ms. Burnside testified that the "assumed" award of Social Security benefits was $32,101, and explained the calculation, based on the release form. (Ex. 3, Ex. 4 at 2.) Ms. Burnside also explained that Esis adjusted that total assumed award and determined the overpayment amount to be recovered was $31,791. The Court finds her testimony persuasive. Therefore, the Court finds that the total amount that DaimlerChrysler was entitled to recover from Mr. Delicruz for overpaid benefits was $31,791.

As to any adjustments to that amount, Mrs. Delicruz testified that Medicare insurance premiums were deducted from the benefits Mr. Delicruz received. Although she testified that the amount of $46.10 was deducted from the monthly Social Security payments, she never clearly stated how many monthly payments were made after the initial lump sum payment. Her later testimony differed from her initial testimony when she stated her husband only received the initial lump sum payment. On the other hand, Ms. Burnside testified that whether or not Medicare insurance premiums would be deducted from an award would have been contained in the award letter, which the Debtors failed to provide. Moreover, even if that information had been provided, Ms. Burnside testified that Esis would not have reduced the overpayment amount, but instead would have reimbursed Mr. Delicruz directly. Without knowing whether the insurance premiums

should reduce the overpayment amount, or even the amount of those premiums, the Court is unable to make a finding that the overpayment amount should be decreased by the amount of Medicare insurance premiums.

Mrs. Delicruz also stated that Mr. Delicruz's children received $10,000 directly from Social Security and that this was a separate award to them, and should not be treated as part of the Social Security award to Mr. Delicruz. As supporting documentary evidence, the Debtors relied on Exhibits A–E, the computer printouts for "RSDI PAYMENT HISTORY". Mrs. Delicruz was questioned about these Exhibits, but her testimony was vague and it was evident that she had little personal knowledge of the forms or the information on the forms. Ms. Burnside stated that she was familiar with similar information being provided on different forms by the Social Security Administration, but with more detail. She had not seen that particular form or format. Although the Debtors offered these exhibits to prove that deductions were made for Medicare insurance and payments were made to the children, no witness was able to interpret the forms or to explain the details of the information on them. Exhibits A–E are virtually indecipherable to the Court. There was no foundation established even as to their source. Nor could any witness testify authoritatively as to their content. Therefore, the Court gives them little evidentiary weight. The Court does find probative, and therefore gives greater weight, to the Authorization to Secure Award or Denial Information form, which under Item 2 has a section labeled "Dependent Award(s)". (Ex. 3.) This section is blank, indicating that the Social Security Administration made no award to any dependent, and the entire Social Security benefit award of $32,101 was made to Mr. Delicruz.

In weighing all of the evidence, the Court concludes that the Debtors have not met their burden of proving that there should be any adjustments to the assumed award of $32,101 in Social Security benefits, or to Esis' calculation of the overpaid benefit amount of $31,791. Therefore, the Court finds that DaimlerChrysler was authorized to recover $31,791. The Court accepts DaimlerChrysler's calculation that it had recovered $23,608.25 as of July 30, 2003, leaving a shortfall of $8,182.75. (Ex. 4 at 1.) It is unknown how much of the $23,608.25 came from Mr. Delicruz's wages, which the Court has held must be returned to Mr. Delicruz. However, any amounts so reimbursed to Mr. Delicruz can be added to the shortfall, the recoupment of which out of future sickness and accident benefits, and extended disability benefits, survives the discharge.

### IV. Conclusion

In summary, (1) this Court has core jurisdiction to determine the existence of a debt and whether such debt is subject to the discharge injunction; (2) cause exists to reopen the case for entry of an order memorializing the Court's findings; (3) the Debtors did not meet their burden of proving that the Disposition of the return to work grievance resolved the overpayment issue; (4) DaimlerChrysler is authorized to recover $31,791 of the $32,101 assumed award of Social Security benefits; (5) Daimler/Chrysler has both a right to recoup against future disability benefits and a right to setoff against wages under the Plan; (6) DaimlerChrysler's right to setoff against wages created a right to payment and thus liability on a claim, and a debt which was discharged; and (7) Daimler-Chrysler's right to recoup against future benefits did not create a right to payment, thus it did not create liability on a debt and is not dischargeable under the Code.

Accordingly, the motion to reopen is GRANTED. The Court will enter an order consistent with this opinion.

### ORDER GRANTING DEBTORS' MOTION TO REOPEN ESTATE TO ADD OMITTED CREDITOR

This matter came before the Court upon Debtors' Motion to Reopen Estate to Add Omitted Creditor. An evidentiary hearing was held on August 6, 2003 and the parties thereafter submitted closing arguments in writing. For the reasons set forth in this Court's Opinion Granting Debtors' Motion to Reopen Estate to Add Omitted Creditor,

IT IS HEREBY ORDERED that the Debtors' Motion to Reopen Estate to Add Omitted Creditor is granted.

IT IS FURTHER ORDERED that the Debtors shall add DaimlerChrysler to their schedules of assets and liabilities as a creditor in this Chapter 7 case.

IT IS FURTHER ORDERED that the overpayment of benefits made by Daimler-Chrysler to Francisco Jose Delicruz is adjudged to be $31,791.00 ("Overpayment").

IT IS FURTHER ORDERED that the amount of the Overpayment recovered by DaimlerChrysler as of July 30, 2003 is adjudged to be $23,608.25, leaving an unrecovered balance of the Overpayment in the amount of $8,182.75.

IT IS FURTHER ORDERED that DaimlerChrysler is determined to have a right to recoup the Overpayment out of sickness and accident and extended disability benefits owing or to become owing by DaimlerChrysler to Francisco Jose Delicruz.

IT IS FURTHER ORDERED that DaimlerChrysler does not have a right to recoup any of the Overpayment from the wages earned or to be earned by Francisco Jose Delicruz for services rendered by him for DaimlerChrysler. To the extent that DaimlerChrysler has deducted any of the Overpayment from the wages earned by Francisco Jose Delicruz for the performance of services by him for DaimlerChrysler, DaimlerChrysler is hereby ordered to immediately refund such amount to Francisco Jose Delicruz. Any amount so refunded by DaimlerChrysler shall be added to the sum of $8,182.75 which represents the remaining balance of the unrecovered Overpayment of benefits which Daimler-Chrysler may recoup from sickness and accident or extended disability benefits owing or to become owing by it to Franciso Jose Delicruz.

IT IS FURTHER ORDERED that any debt owing to DaimlerChrysler by Francisco Jose Delicruz was discharged by the discharge order entered in this case on September 20, 2001.

IT IS FURTHER ORDERED that the discharge order entered by the Bankruptcy Court on September 20, 2001 and this order do not impair DaimlerChrysler's right of recoupment of the Overpayment of benefits from sickness and accident and extended disability benefits owing by DaimlerChrysler to Francisco Jose Delicruz.

IT IS FURTHER ORDERED that this bankruptcy case is reopened for the limited purpose of entering this order and allowing the Debtors to file amended schedules, and shall thereafter be closed.